**Sean FITZGERALD, P.P.A., Cynthia A. Fitzgerald, et al., Plaintiffs, Appellants,**

v.

**EXPRESSWAY SEWERAGE CONSTRUCTION, INC., et al., Defendants, Appellees.**

No. 98–1473.

United States Court of Appeals, First Circuit.

Heard May 5, 1999.

Decided May 27, 1999.

John T. Landry, III, with whom Glynn and Landry was on brief, for appellants.

Drew M. Elinoff for appellees.

Before Selya, Circuit Judge, Kravitch,[*] Senior Circuit Judge, and Lipez, Circuit Judge.

SELYA, Circuit Judge.

This single-issue appeal pivots around the evidentiary implications of the collateral source rule. We conclude that, notwithstanding the rule, the trial court acted within its discretion in admitting evidence anent payments made by the plaintiffs' health-care insurer. Consequently, we affirm the judgment below.

The facts of the underlying incident are of little relevance to the issue on appeal, and we do not dwell on them. It suffices to say that, on August 6, 1994, six-year-old Sean Fitzgerald sustained injuries while riding on a parade float in Kingston, Massachusetts. Sean, joined by his parents, thereafter invoked diversity jurisdiction, see 28 U.S.C. § 1332, and sued the float's owner, Expressway Sewerage Construction, Inc., and its operator, Roy Vaughn.[1] The substantive law of Massachusetts governed this suit. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). At trial, the judge admitted the disputed evidence over the plaintiffs' objection, and the jury subsequently returned a verdict absolving the defendants of liability. On appeal, the plaintiffs contend that this evidentiary ruling contravened the collateral source rule and constituted reversible error.

The Commonwealth's iteration of the collateral source rule is fairly typical. It provides, in the large, that compensation received from a third party unrelated to a tortfeasor-defendant (the collateral source) will not diminish an injured party's recovery from that tortfeasor. See Jones v. Wayland, 374 Mass. 249, 262, 373 N.E.2d 199, 207 (1978); Goldstein v. Gontarz, 364 Mass. 800, 809, 309 N.E.2d 196, 203 (1974). Implementation of the rule necessarily gives rise to an evidentiary analogue. See, e.g., Corsetti v. Stone Co., 396 Mass. 1, 16–17, 483 N.E.2d 793, 802 (1985). This analogue customarily bars the introduction of proof of collateral source payments made to a plaintiff. See id. ("Ordinarily, a defendant may not show that the plaintiff has received other compensation for his injury, whether from an accident insurance policy ... or from other sources.") (citations and internal quotation marks omitted). An exception takes hold, however, if evidence of payment from a collateral source is relevant to some other material issue in the case. See id. at 17, 483 N.E.2d at 802.

The case law sometimes confuses these interrelated principles, moving effortlessly from the substantive to the evidentiary strands of the collateral source doctrine, and back, with little differentiation. See generally Joel K. Jacobsen, The Collateral Source Rule and the Role of the Jury, 70 Or. L.Rev. 523, 525 (1991) (observing that most courts "assume, without appearing to give the matter much thought, that the collateral source rule functions both as a rule of evidence and as a rule of damages," and stating that "deeming the rule hermaphroditic merely obscures some of its more salient features and adds unnecessary confusion"). This blurring has potentially deleterious consequences in diversity cases, for those cases necessitate disentangling substantive rules from procedural ones. See Daigle v. Maine Med. Ctr., Inc., 14 F.3d 684, 689 (1st Cir.1994).

The question raised but not clearly answered by the case law is whether, in diversity cases, state evidentiary rules re-

---

[*] Of the Eleventh Circuit, sitting by designation.

1. The plaintiffs also sued the Town of Kingston. Because they settled with the town prior to trial, we omit further reference to that aspect of the case.

garding compensation from collateral sources should displace the Federal Rules of Evidence. *Compare, e.g., DeMedeiros v. Koehring Co.,* 709 F.2d 734, 740–41 (1st Cir.1983) (analyzing the evidentiary implications of certain collateral source payments under Fed.R.Evid. 403 in a diversity case), *with McInnis v. A.M.F., Inc.,* 765 F.2d 240, 245 (1st Cir.1985) (suggesting in dictum, in a diversity case, that by adopting the Federal Rules of Evidence, "Congress did not intend [them] to preempt so-called 'substantive' state rules of evidence such as the . . . collateral source rule"). Although the end result in this appeal in all probability would be the same under either approach,[2] we see no valid reason to treat the evidentiary prong of the collateral source rule differently than any other state evidentiary doctrine. We explain briefly.

■ It is axiomatic that, when parties litigate a case in a federal court on the basis of diversity jurisdiction, state law supplies the substantive rules of decision. *See, e.g., Blinzler v. Marriott Int'l Inc.,* 81 F.3d 1148, 1151 (1st Cir.1996); *Daigle,* 14 F.3d at 689. Whether damages in a tort suit are mitigable by payments originating with a third party depends, quite obviously, on substantive principles. Hence, the state-law collateral source rule supplies the rule of decision.

■ It is equally axiomatic, however, that federal evidentiary rules govern in diversity cases. *See* Fed.R.Evid. 101, 1101(b); *Cameron v. Otto Bock Orthopedic Ind., Inc.,* 43 F.3d 14, 18 (1st Cir.1994). The applicability *vel non* of a specific rule of evidence depends on whether Congress intended the rule to obtain in a given context. *See* 19 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4512 (2d ed. 1996 & Supp.1999). If the federal evidentiary rule is "sufficiently broad to control a particular issue," the court must apply it. *Daigle,* 14 F.3d at 689.

■ So it is here: the Federal Rules of Evidence (and in particular Rules 401, 402, and 403) are malleable enough to deal with the principal evidentiary issues contemplated by the collateral source rule: relevancy and unfairly prejudicial effect. That ends the choice-of-law inquiry. *See* Wright et. al., *supra* § 4512 ("If a Federal Rule of Evidence covers a disputed point of evidence, the Rule is to be followed, even in diversity cases, and state law is pertinent only if and to the extent the applicable Evidence Rule makes it so.").

To sum up, the Massachusetts collateral source rule must be given full credit in this case *as a rule of damages.* The evidentiary implications flowing from that rule, however, are governed by the Federal Rules of Evidence. Thus, we disavow the *McInnis* dictum and proceed to examine the challenged ruling through a federal prism.

■ The parties agree that the Commonwealth's collateral source rule prohibits mitigating damages by the amount of first-party insurance proceeds received. Because proof of such payments is irrelevant to mitigation of damages (and, hence, inadmissible on that issue), the threshold question is whether evidence of these payments is relevant to some other contested issue in a particular case. Consequently, we focus on whether, in the circumstances at bar, such evidence tended to make the existence of some other fact "of consequence to the determination of the action more or less probable than it would be without the evidence." Fed.R.Evid. 401.

The defendants argue here, as they did below, that testimony by Sean Fitzgerald's mother (herself a plaintiff) on direct examination furnished a valid basis for admitting evidence of the insurance payments.

---

2. In the collateral source context, the balancing of probative value and prejudicial effect dictated by Fed.R.Evid. 403 is much the same as the analytical approach to the admissibility of collateral source evidence traditionally employed by the Massachusetts courts. *See, e.g., Goldstein,* 364 Mass. at 812–13, 309 N.E.2d at 205.

Under questioning by her attorney, Mrs. Fitzgerald reported that Sean's medical bills and related expenses exceeded $20,000. The lawyer then asked her to "describe the impact that this accident to Sean has had on your family." She replied that the accident had imposed "quite a strain both emotionally and financially."

When embarking on cross-examination, defense counsel complained that this testimonial sequence created a false impression that medical expenses were causing financial hardship and sought leave to show the insurance payments as an antidote. To put matters into better perspective, the court kept the cross-examiner on a short leash, permitting him at first to probe no further than whether Mrs. Fitzgerald had meant that the medical bills were a source of financial strain. Only after the witness had responded affirmatively to that effect did the court find evidence of the insurance payments relevant and admissible.

■ We review rulings of the district court admitting or excluding evidence for abuse of discretion. *See Williams v. Drake*, 146 F.3d 44, 47 (1st Cir.1998). The court's ruling here encompassed two subsidiary determinations: a finding that the proffered evidence was relevant to the "financial strain" issue, and a follow-on determination that the evidence's probative value was not substantially overshadowed by its capacity unfairly to prejudice the jury.

We need not tarry over the first of these determinations. Under federal evidentiary standards, the relevancy hurdle is low, *see United States v. Saccoccia*, 58 F.3d 754, 780 (1st Cir.1995), and the disputed evidence cleared it with room to spare. Mrs. Fitzgerald's testimony made the existence and degree of financial strain caused by Sean's medical expenses a fact of consequence in the litigation, independent of the amount of those expenses. Evidence that a third party (the health-care insurer) defrayed most of those costs cast doubt upon (and, thus, tended to undermine) the claim that the burgeoning medical bills produced financial strain. The evidence was, therefore, relevant.

The second aspect of the district court's ruling presents a somewhat closer call. Evidence, though relevant, nonetheless "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. The plaintiffs assert that this case falls into that category. We do not agree.

To be sure, introduction of collateral source evidence almost inevitably creates a risk that a jury, informed, say, that a plaintiff has recourse to first-party insurance proceeds, may be unduly inclined to return either a defendant's verdict or an artificially low damage award. This risk of prejudice is real, but Rule 403 directs that a trial court balance it against the evidence's probative worth, and exclude the evidence only when (and if) the discerned risk substantially outweighs the anticipated value.

■ A trial judge has a unique coign of vantage in performing this type of delicate balancing. In calibrating the appellate scales, therefore, the trial judge's first-hand assessment, reflecting his or her "feel" for the case, is entitled to considerable deference. *See United States v. Sutton*, 970 F.2d 1001, 1008 (1st Cir.1992); *United States v. Tierney*, 760 F.2d 382, 388 (1st Cir.1985). "Only rarely—and in extraordinarily compelling circumstances—will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." *Freeman v. Package Mach. Co.*, 865 F.2d 1331, 1340 (1st Cir.1988).

The circumstances here are not compelling. The relevance of the evidence is plain and its probative value on the relevant issue is high. Moreover, the defendants ameliorated the risk of prejudice by making their point about the availability of other funds with surgical precision, resisting the temptation to inflict one thousand cuts. The lower court also took steps to

dispel any incipient prejudice by giving an immediate prophylactic instruction (the form of which elicited no complaint from the plaintiffs). By clarifying the limited significance of the insurance payments, the court reduced the chance that the evidence would be misused by the jury. *See United States v. Ladd,* 885 F.2d 954, 959 (1st Cir.1989). The short of it is that, on this record, no justification exists for us to second-guess the district court's skillful handling of the situation.

We need go no further. In this case, the plaintiffs opened the door for evidence of insurance payments. Having done so, they are hard put to complain that the defendants passed through the portal. Applying the Federal Rules of Evidence— which furnish the benchmark for the admissibility of collateral source evidence in a diversity action—we discern no abuse of discretion in the court's admission of the challenged evidence.

*Affirmed.*