### In re SALEM SUEDE, INC., Debtor.

**Foreign Car Center, Inc., Stefano Picciotto, Judith Picciotto, Juan B. Nunez, and Jose B. Ferreras, Plaintiffs,**

v.

**Salem Suede, Inc., Zion Realty Corporation, The Travelers Insurance Company, and The Travelers Indemnity Company, Defendants.**

**Stefano Picciotto, Judith Picciotto, Melita Picciotto, Athena Picciotto, Foreign Car Center, Inc. and Juan Nunez, Appellants,**

v.

**The Travelers Indemnity Co., Appellee.**

Civ.A. No. 99–11466–REK.

Bankruptcy No. 96–13184–JNF.

Adversary No. 96–1298.

United States District Court,
D. Massachusetts.

Nov. 30, 1999.

---

Dana E. Casher, Leonard M. Krulewich & Associates, Boston, MA, for appellants.

Stephen F. Gordon, Gordon & Wise, Eric Bradford Hermanson, Choate, Hall & Stewart, Boston, MA, for appellees.

KEETON, District Judge.

## I. Procedural Background of This Appeal

This is an appeal by Stefano Picciotto, Judith Picciotto, Melita Picciotto, Athena Picciotto, Foreign Car Center, Inc., and Juan Nunez, Appellants, from Orders of the Bankruptcy Court (Feeney, J.) of May 26, 1999 and May 27, 1999.

Notice of Appeal, dated June 3, 1999, was filed in Bankruptcy No. 96–13184–JNF on June 4, 1999 (Docket No. 953).

The Order of May 26, 1999 denied an Emergency Motion for Release of Transcript of Hearing on February 26, 1999.

The Order of May 27, 1999 denied an Emergency Motion for Reconsideration of Denial of the Emergency Motion for Release of Transcript of Hearing on February 26, 1999.

Appellants acknowledge that the bankruptcy matter in which these two motions were filed has been concluded. Appellants contend that the issues raised in the motions relate to previous rulings of the Bankruptcy Court, that the Bankruptcy Court had jurisdiction under 11 U.S.C. § 105(a), and that this court has jurisdiction over the appeal under 28 U.S.C. § 158(a).

## II. Statements of Facts in the Briefs

Appellants' Statement of Facts is as follows:

On January 6, 1999 when the Settlement Agreement which formed the foundation of the successful conclusion of the Case was executed, all parties thereto knew that the Judgment Creditors had issues to resolve with their prior counsel which might effect the timing of performance of the settlement.

Indeed, express reference was made to those issues in several provisions of the Settlement Agreement itself (See Appendix Exhibit F). Most particularly, the Judgment Creditors negotiated an exception in the Confidentiality Provision in the Settlement Agreement "... to gain releases of attorneys' liens ..." (See Appendix Exhibit F, Page 7, Paragraph 10) and consistently maintained that exception throughout the Judgment Creditors' Emergency Motion to File Documents Under Seal (the "Motion to Seal") and the hearing on that Motion (See Appendix Exhibits G and H, Pages 26 through 27). Moreover, neither the Motion to Seal which, as allowed by marginal notation constitutes the "sealing order" in the Case, nor any other order of the bankruptcy court refers to the sealing of transcripts of public hearings (See Appendix Exhibit G).

The alleged attorney lienholders have made numerous statements in filings in the Interpleader (which action is, fundamentally, an action to gain releases of attorneys' liens) regarding issues addressed in the bankruptcy court for which the best (and only conclusive) way to refute them is by reference to the bankruptcy court's official records (See, for example, Appendix Exhibit S, Exhibit E). The Interpleader is presently active and the Judgment Creditors anticipate further use of the bankruptcy records in resolving the issues raised therein. As there is no confidentiality maintained in the Interpleader, denial of access to the Transcript only serves to prevent the state court from knowledge of the harm the Judgment Creditors' former attorneys have caused, and continue to cause their clients.

Docket No. 4 at 14–15.

Appellee challenges in material part the Appellants' Statement of Facts. Appellee's statement of facts is as follows:

On January 6, 1999, appellants Stefano Picciotto, Judith Picciotto, Melita Picciotto, Athena Picciotto, Juan Nunez and Foreign Car Center, Inc. (hereafter the "Picciottos") and The Travelers Indemnity Company ("Travelers"), amongst others, entered into a settlement agreement (the "Settlement Agreement"). The Settlement Agreement resolved various litigations and potential litigations between the parties, including Bankruptcy Adversary Proceeding 96–1298 (the "Adversary Proceeding"). A key component of the Settlement Agreement was a confidentiality provision, which provided:

Except as required by law or to effectuate the necessary judicial approvals, to gain releases of attorneys' liens, for submission by Travelers to its insurers, reinsurers or auditors, or to enforce the terms of this Agreement, the parties will use best efforts to maintain the confidentiality of the settlement amount, settlement agreement, this term sheet and the settlement terms, including but not limited to jointly seeking approval of the Bankruptcy Court to place under seal all settlement agreements and materials involving the parties who are signatories below.

Exhibit F of Plaintiff's Appendix of Exhibits ("App.Ex. F"), para. 10.

Pursuant to the terms of the Settlement Agreement, on February 10, 1999 the Picciottos filed, in the Adversary Proceeding, an Emergency Motion to File Documents Under seal ("Emergency Motion"). App.Ex. G. The Emergency Motion noted that "the guarantee of confidentiality is an essential component of the Settlement Agreement, and the agreement is put at risk if the terms become public." *Id.* The Emergency Motion also argued that "there is little or no benefit to allowing public access to the terms of what is nothing more than a settlement agreement between private parties." *Id.* In response to the Emergency Motion, the Bankruptcy Court issued an Order on February 11, 1999 (the "Sealing Order") which required "seal-

ing [of] all documents referring either directly to indirectly to any of the terms or conditions of the settlement agreement entered into by the parties on January 6, 1999 ..., including but not limited to the settlement amount." *Id.* The Picciottos did not appeal from the Sealing Order.

On February 26, 1999, a hearing was held in the Bankruptcy court in which the terms of the confidential Settlement Agreement were discussed. Pursuant to the terms of the Sealing Order, the transcript of that hearing was sealed by the Bankruptcy Court (hereafter the "Sealed Transcript").

On May 20, 1999—despite the terms of the Settlement Agreement and its own earlier motion to the Court—the Picciottos filed an emergency motion asking the Bankruptcy Court to release the Sealed Transcript ("Motion to Unseal"). App.Ex. Q. The Motion to Unseal contained no facts supporting release of the transcript. Instead, it merely contained the conclusory statement that the Picciottos needed the transcript "for purposes of the interpleader action in Suffolk Superior Court." *Id.* The Bankruptcy Court denied the Motion on May 26, 1999. App. Ex. R. The Picciottos thereafter filed a motion for reconsideration of the Bankruptcy Court's May 26, 1999 Order ("Motion for Reconsideration"). App. Ex. S. On May 27, 1999 the Bankruptcy Court denied that motion as well, noting that the "[m]ovant has failed to demonstrate why the sealed transcript would be necessary." *Id.* By this appeal, the Picciottos now seek to appeal from those Orders.

Docket No. 6 at 2–4.

### III. The Form and Meaning of the Sealing Order

The Sealing Order of February 11, 1999 was in the form of a handwritten "Motion Allowed" on the margin of the motion docketed as Docket No. 793 in the Bankruptcy Court. To determine the content of the Sealing Order we must consider the text of the motion, which included the following phrase of approximately 70 words:

sealing all documents referring either directly or indirectly to any of the terms and conditions of the settlement agreement entered into by the parties on January 6, 1999 (the 'Settlement Agreement'), including but not limited to the settlement amount, in accordance with the Confidentiality Provision (defined below) of the Settlement Agreement.

It is true, as appellants argue, that the Sealing Order did not literally extend beyond this phrase. It is also true, however, that the meaning of the approximately–70–word phrase is illuminated by the recitation in the motion of the grounds stated in support of it. We may infer that the Bankruptcy Judge accepted these grounds in allowing the motion with no stated condition or qualification. We may infer also that the recited grounds apply to any part of the transcripts at issue that reveal the terms and conditions of the settlement agreement, *not limited to the settlement amount,* in accordance with the Confidentiality Agreement. This inference is appropriate in view of the explicit reference to the Confidentiality Agreement that appears in paragraph 10 of the Settlement Agreement. *See* Docket No. 5, Ex. F at 7.

Also, if any part of the transcript of the Hearing on February 26, 1999 reveals "the settlement amount" or any other aspect of "the terms and conditions of the settlement agreement" that are within the scope of the grounds for the motion for sealing and the allowance of that motion by the Sealing Order, "Motion Allowed," its disclosure appears to be prohibited by the Sealing Order absent some modification of that order, by the Bankruptcy Court or on appeal, for good cause shown.

### IV. Applying the Correct Standard of Review in This Appeal

■ This appeal is from the orders of May 26 and 27, 1999. Absent some show-

ing of an error of law that is an apparent premise of the Bankruptcy Court's orders of May 26 and May 27, 1999, this court reviews these orders for abuse of discretion. *E.g., Fitzgerald v. Expressway Sewerage Const., Inc.,* 177 F.3d 71, 75 (1st Cir.1999); *Freeman v. Package Machinery Co.,* 865 F.2d 1331, 1340 (1st Cir.1988). *See also Wilson v. American Motors Corp.,* 759 F.2d 1568, 1570 (11th Cir.1985), which appellants cite and rely upon in this appeal.

■ I conclude that appellee is correct, in its response to appellants' arguments on this appeal, that the appellants have failed to set forth facts, by affidavit or otherwise, that would support a determination by this court that the Bankruptcy Court abused its discretion in declining to unseal the Sealed Transcript.

The record before this court on appeal strongly supports the Bankruptcy Court's determination, on May 27, 1999, that the Picciottos, after full opportunity to do so, failed to demonstrate why they should be allowed to escape the implicit terms and purposes of the Sealing Order of February 11, 1999, by being allowed to disclose all or some precisely identified part of the transcript of the hearing of February 26, 1999.

Both the Motion to Unseal and the Motion for Reconsideration lack any recitation of facts that would have constituted good cause for the Bankruptcy Court to unseal the Sealed Transcript.

Appellants argue that the Sealing Order did not envision the sealing of hearing transcripts, but only "documents" in a sense that would exclude transcripts. A court's accepting that argument would render the Sealing Order and the confidentiality provisions of the Settlement Agreement worth very little. What could prevent an attorney who wished to do so from reading into the record, so it would be in a transcript of the hearing in which the attorney did so, whatever sensitive part of the Settlement Agreement he wanted to disclose to avoid the purpose and effect of the confidentiality clause? The appellants' position would defeat the purpose and manifested intent of both the Sealing Order and the confidentiality provision of the Settlement Agreement. The Bankruptcy Court was well within its discretion in rejecting the appellants' proposed interpretation of the Sealing Order.

A second argument of appellants is that the Sealing Order did not apply at all to documents used to obtain the release of attorneys liens. *See* Docket No. 5, Ex. S at ¶¶ 4–5. But, as noted by appellee in its submission before this court on appeal, appellants made no effort in their Motion to Unseal to explain to the Bankruptcy Court why it should unseal the hearing transcript, or how unsealing the transcript would aid the appellants' attempt to obtain releases of attorneys' liens. Instead, the appellants merely stated summarily that they needed the transcript "for purposes of the interpleader action pending in Suffolk Superior Court." *See id.* at Ex. Q. The reasons for releasing the transcript listed in the Motion for Reconsideration were similarly sparse, and included no explanation of how the release of the Sealed Transcript would allow the Picciottos to gain releases of attorneys' liens. Faced with a lack of evidence as to why it should abandon its Sealing Order, the Bankruptcy Court acted within its discretion in denying the Motion to Unseal.

### V. Further Clarification

For clarity of the record, I note that appellee is correct in calling attention to the fact that no party filed a timely appeal from the Sealing Order of February 26, 1999. The appeal from the orders of May 26 and 27, 1999 does not place the February 26 order before this court for review.

■ Also, the First Amendment arguments made for the first time in the appellants' brief and in oral argument in this court are not properly before this court in this appeal and are not addressed in this opinion.

## ORDER

For the foregoing reasons, it is OR-DERED:

The Clerk is directed to enter forthwith on a separate document a Final Judgment as follows:

For the reasons stated in the Opinion of November 30, 1999, it is ORDERED:

The orders of the Bankruptcy Court of May 26 and May 27, 1999 from which this appeal was taken are AFFIRMED. Costs are awarded to appellee.