Argued and submitted May 29, reversed and remanded with instructions to reinstate the general judgment December 26, 2007, petition for review denied April 16, 2008 (344 Or 401)

Raymond E. GRAGG,
*Plaintiff-Appellant,*

*v.*

Neva HUTCHINSON,
personal representative of the estate of
Oreta L. Holder,
*Defendant-Respondent.*

Marion County Circuit Court
02C19748; A124493

176 P3d 407

Charles Robinowitz argued the cause and filed the briefs for appellant.

Keith J. Bauer argued the cause for respondent. With him on the brief was Parks, Bauer, Sime, Winkler & Fernety, LLP.

Before Wollheim, Presiding Judge, and Rosenblum and Sercombe, Judges.

ROSENBLUM, J.

**ROSENBLUM, J.**

Plaintiff appeals an order granting defendant's motion for a new trial after the jury had returned a verdict in favor of plaintiff. We reverse and remand with instructions to the trial court to reinstate the general judgment.

The material facts are undisputed. Plaintiff's truck was stopped at a drive-through window when a car driven by defendant's mother, decedent,[1] struck the rear of his truck. Plaintiff sued, alleging that decedent negligently caused the accident and that plaintiff suffered injuries to his shoulders, back, and neck as a result.

The case was tried to a jury. Because defendant admitted liability, the jury was asked only to find whether plaintiff was injured and, if so, to determine the amount of damages to which plaintiff was entitled. During *voir dire*, plaintiff's counsel told the jury panel that the case "involve[d] a personal injury, fortunately not a real serious one, but one that nevertheless involves some out-of-pocket expenses and some—and a permanent injury," and that "the evidence is going to be that [plaintiff has] been out of pocket over $5,000 in medical bills and he's got a permanent injury." The latter statement prompted one potential juror to ask whether "this person"[2] was insured, and the following exchange occurred:

"[PLAINTIFF'S COUNSEL]: That's something—that's something the Court does not allow us to tell you one way or the other.

"JUROR: But does insurance handle some (inaudible).

"[PLAINTIFF'S COUNSEL]: We can't tell you that, you're not allowed to—you're allowed—you're supposed to

---

[1] The driver of the car died of causes unrelated to the accident after plaintiff brought this action. Plaintiff amended his complaint to substitute the driver's daughter and personal representative as defendant.

[2] While defendant contends the juror's use of "this person" referred to plaintiff, plaintiff contends the term instead referred to decedent because plaintiff was sitting in the courtroom before the jury panel when the question was asked. We cannot tell from the record which interpretation is more plausible, and we need not do so to resolve this appeal.

make a decision without regard to that. I'm actually the one that's supposed to ask the questions.

"JUROR: (Laughing) (inaudible)."

After the jury was selected, plaintiff's counsel delivered his opening statement, again characterizing the case as "not involving a lot of money but some out-of-pocket—significant out-of-pocket expense." During his opening statement, plaintiff's counsel told the jury that plaintiff "has spent a little over $5,200 in medical bills from a year after the injury," and that "the big problem is he's had a $5,200 out-of-pocket expense." Plaintiff's counsel concluded his opening statement by describing the case as involving a "very simple injury but it is an out-of-pocket expense and it's going to continue to be an out-of-pocket expense and that's why [plaintiff] is here."

Plaintiff testified at trial that he paid over $5,000 in medical expenses "out of [his] pocket."

"Q Now, do you remember—do you know how much you paid in medications yourself since a year following the injury to date, do you know the exact figure?

"A I do not know the exact figure, but it's well over $5,000 out of my pocket.

"* * * * *

"Q And were there any other costs at all [other than prescriptions and medical treatment]?

"A Yes. There's a cost here [on Exhibit 11] related to obtaining records. I believe that's for the trial, but I could be mistaken. That's [$]6.50 to Dr. Takacs. It's $25 for Dr. Silver's records, and $175 for his last report for a total of [$]206 and change. That [exhibit] shows this as being out of my pocket $5,206.59."

Outside the presence of the jury, defendant indicated her intention to cross-examine plaintiff to demonstrate that the amounts that plaintiff claimed were paid "out of [his] pocket" were inaccurate because medical insurance covered a portion of the expenses. Plaintiff objected on the ground that Oregon's collateral source rule, codified in ORS 31.580, prohibited that line of questioning. The trial court sustained the objection and ruled that defendant was not permitted to

cross-examine plaintiff about his insurance coverage or benefits he may have received pursuant to that coverage.

During closing arguments, plaintiff's counsel explained that, if the jury determined that plaintiff was indeed injured in the accident, they must then consider "what the law calls damages or out-of-pocket costs for compensation." The jury returned a verdict for plaintiff and awarded $20,000 in economic damages and $2,245 in non-economic damages, and the court issued a general judgment to that effect.

Defendant filed a motion for a new trial pursuant to ORCP 64 B(6), which permits the granting of a new trial on the basis of "[e]rror in law occurring at the trial and objected to or excepted to by the party making the application." Defendant again took the position that it was error not to allow cross-examination of plaintiff regarding insurance payments that he had received for his out-of-pocket expenses and argued that evidence of collateral benefits was relevant to impeach plaintiff's testimony that he paid his medical bills himself. Plaintiff replied that such a line of questioning would have violated ORS 31.580. The trial court granted the motion without explanation, and plaintiff appeals.[3]

At the outset, we note that the parties disagree about the appropriate standard of appellate review of an order granting a new trial based on legal error committed at trial. Plaintiff urges us to review the trial court's determination for legal error, arguing that the trial court committed an error of law when it held after the trial that defendant should have been able to introduce evidence of collateral benefits during plaintiff's cross-examination. *See Bennett v. Farmers Ins. Co.*, 332 Or 138, 151, 26 P3d 785 (2001) ("When the trial court's order of a new trial is based on an interpretation of law, we review that order for errors of law."). Defendant urges us to review the trial court's determination for abuse of discretion. *See Schacher v. Dunne*, 109 Or App 607, 820 P2d 865 (1991), *rev den*, 313 Or 74 (1992) (deferring to the trial

---

[3] The trial court issued an opinion letter stating only that it "finds defendant's arguments persuasive and grants the motion."

court's discretion to determine prejudice when affirming a grant of a motion for a new trial).

■■ Both standards of review play a role in our analysis. We will affirm an order granting a new trial pursuant to ORCP 64 B(6) if any of the grounds argued in support of the motion is well-taken and the error was prejudicial. *Williams v. Laurence-David*, 271 Or 712, 718, 534 P2d 173 (1975). Each prong of this two-part inquiry requires us to employ a different standard of review. We first consider whether the grounds for the motion are well-taken; that is, we must determine if the trial court overruled an objection or exception that it should have sustained or sustained an objection or exception that it should have overruled. Accordingly, we review that ruling for errors of law, giving no deference to the trial court's decision. *See Waddill v. Anchor Hocking, Inc.*, 190 Or App 172, 177, 78 P3d 570 (2003).

■■ If we determine that the trial court committed legal error, we then consider whether that legal error prejudiced the rights of the moving party. Because " 'the trial court is usually in a better position to evaluate the circumstances of each case and the prejudicial effect, if any, of any claimed irregularity,' " we defer to the trial court's conclusions regarding prejudice. *Schacher*, 109 Or App at 611 (quoting *Moore v. Adams*, 273 Or 576, 579, 542 P2d 490 (1975)). Accordingly, we review a trial court's determination of the prejudicial effect of a legal error for abuse of discretion. *See Moore*, 273 Or at 579; *Beglau v. Albertus*, 272 Or 170, 180-81, 180 n 3, 536 P2d 1251 (1975).[4]

We begin by evaluating whether the trial court committed legal error by prohibiting defendant from cross-examining plaintiff about his medical insurance coverage after

---

[4] A trial court's order granting a motion for a new trial based on a ruling that we determine was not erroneous is a *per se* abuse of its discretion. *See State ex rel Juv. Dept. v. D. J.*, 215 Or App 146, 155, 168 P3d 798 (2007) (citing *Wells v. Santos*, 211 Or App 413, 418, 155 P3d 887, *rev den*, 343 Or 160 (2007)) (" 'Discretion' allows the court to choose among several *legally correct* outcomes. If the court's decision was within the range of legally correct discretionary choices and produced a permissible, legally correct outcome, then the court did not abuse its discretion. * * * [A] decision is not within the range of legally correct discretionary choices if it is unjustified by, and clearly against, reason and the evidence." (Citations omitted; emphasis added.)).

plaintiff testified that he paid medical expenses "out of [his] pocket." Plaintiff argues that defendant was statutorily prohibited from cross-examining him about his insurance coverage under ORS 31.580. That statute, which codified the collateral source rule, provides:

"(1)   In a civil action, when a party is awarded damages for bodily injury or death of a person which are to be paid by another party to the action, and the party awarded damages or person injured or deceased received benefits for the injury or death other than from the party who is to pay the damages, the court may deduct from the amount of damages awarded, before the entry of a judgment, the total amount of those collateral benefits other than:

"* * * * *

"(c)   Insurance benefits for which the person injured or deceased or members of that person's family paid premiums[.]

"* * * * *

"(2)   Evidence of the benefit described in subsection (1) of this section and the cost of obtaining it *is not admissible at trial*, but shall be received by the court by affidavit submitted after the verdict by any party to the action."

(Emphasis added.) The statute contains no exceptions: Evidence of insurance benefits is not admissible at the trial of a civil action for damages for bodily injury or death.

■      Despite the plain wording of the statute, defendant contends that she should have been allowed to cross-examine plaintiff using evidence of insurance benefits to impeach his testimony that he paid medical expenses "out of [his] pocket." In support of her argument, defendant relies on Oregon cases enacted prior to the passage of ORS 31.580 and cases from other jurisdictions that had not codified the collateral source rule at the time of those decisions. Specifically, defendant argues that Oregon law permits a party to interject evidence of insurance coverage into a trial to show the bias or interest of a witness, *see Rigelman v. Gilligan*, 265 Or 109, 506 P2d 710 (1973), and that other states relying on that same principle have permitted defendants to introduce evidence of insurance to impeach a plaintiff's testimony that he paid his

medical bills himself. *See Fahler v. Freeman*, 143 Ind App 493, 497-98, 241 NE2d 394 (1968) ("[D]efendant was entitled to refute the inference that plaintiff had paid these bills himself and had exhausted his savings doing so."); *see also Fitzgerald v. Expressway Sewerage Const., Inc.*, 177 F3d 71 (1st Cir 1999); *Gladden v. P. Henderson & Co.*, 385 F2d 480 (3d Cir 1967), *cert den*, 390 US 1013 (1968); *Montgomery Ward & Co., Inc. v. Anderson*, 334 Ark 561, 976 SW2d 382 (1998); *Evans v. Wilson*, 279 Ark 224, 650 SW2d 569 (1983), *rev'd on other grounds sub nom Wilson v. Evans*, 284 Ark 101 (1984); *York v. Young*, 271 Ark 266, 608 SW2d 20 (1980); *Hack v. State Farm Mutual Automobile Ins. Co.*, 37 Wis 2d 1, 154 NW2d 320 (1967).

We reject defendant's reliance on cases decided under the common law of other jurisdictions without codified collateral source rules. Those decisions offer no guidance to us.[5] Moreover, although the Oregon Supreme Court has recognized an exception to the common-law collateral source rule for evidence showing bias or interest of a witness, *see, e.g., Rigelman*, 265 Or at 118; *Quigley v. Roath*, 227 Or 336, 362 P2d 328 (1961); *Smith v. Pacific Truck Express*, 164 Or 318, 100 P2d 474 (1940), those cases were decided before the enactment of *former* ORS 18.580 (1987), *renumbered as*

---

[5] Those decisions, which are based upon the common law of other jurisdictions, are inapposite because ORS 31.580 governs our analysis. Even if those cases were somehow relevant, we would conclude that they are factually distinguishable from this case because each relies, in part, on evidence that the plaintiffs had suffered financial hardship or strain as a result of their medical bills. Our review of the record reveals that no such evidence was presented here. *See, e.g., Fitzgerald*, 177 F3d at 75 ("Evidence that a third party (the health-care insurer) defrayed most of those costs cast doubt upon (and, thus, tended to undermine) the *claim that the burgeoning medical bills produced financial strain*." (Emphasis added.)); *Gladden*, 385 F2d at 483-84 ("[Plaintiff testified that] he returned to work and had not visited Dr. Krause again *because he had fallen behind in the payment of his bills and wanted to catch up on them and support his family.* * * * If plaintiff had not added his affirmative testimony on direct examination he would have had the advantage of the collateral benefit rule and the jury would have been required to assess his damages without any knowledge of the collateral benefit he received." (Emphasis added.)); *York*, 271 Ark at 267 ("[Plaintiff] stated on cross-examination that the repairs done *were all that he could afford and there was work to be done that he would have had done if he had been able to afford it*." (Emphasis added.)); *Fahler*, 143 Ind App at 498 ("[D]efendant was entitled to refute the inference that plaintiff had paid these bills himself *and had exhausted his savings doing so*." (Emphasis added.)); *Hack*, 37 Wis 2d at 10 ("Plaintiff had testified *that he went back to work because he needed money for the support of his family*." (Emphasis added.)).

ORS 31.580 (2003). In enacting the statute containing the collateral source rule, the legislature could have chosen to include an exception for evidence of collateral benefits offered to show the bias or interest of a witness, but it did not do so. We will not "insert what has been omitted, or [ ] omit what has been inserted" when determining the meaning of a statute. ORS 174.010. In Oregon, evidence of insurance benefits is not admissible at trial. Accordingly, we conclude that the trial court was correct when it sustained the objection and declined to permit defendant to cross-examine plaintiff about his insurance benefits. Because the trial court committed no legal error in its initial ruling, it follows that it abused its discretion by granting defendant's motion for a new trial on the basis of prejudicial legal error. ORCP 64 B(6).

Reversed and remanded with instructions to reinstate the general judgment.