Argued and submitted April 18, affirmed June 15, petition for review denied September 15, 2011 (350 Or 716)

Dee Ann SCHMITZ,
*Plaintiff-Appellant,*

*v.*

Eric SANSERI,
*Defendant-Respondent.*

Deschutes County Circuit Court
08CV0244AB; A145467

260 P3d 509

William E. Flinn argued the cause for appellant. On the briefs were Warren John West and Warren John West, P.C.

Gary R. Johnson argued the cause and filed the brief for respondent.

Before Brewer, Chief Judge, and Carson, Senior Judge.

BREWER, C. J.

## BREWER, C. J.

Plaintiff brought this negligence action against defendant for personal injuries arising from a motor vehicle accident. Plaintiff appeals from a judgment on a jury verdict that awarded her economic damages in the amount of $4,529 and nominal noneconomic damages in the amount of $1. Plaintiff assigns error to the trial court's denial of her pretrial request to amend her complaint to reduce her economic damage claim to the portion of medical expenses that her own personal injury protection (PIP) insurer had declined to pay. Plaintiff also assigns error to the trial court's sustaining of defendant's objection "to evidence of annual income earned by his defense medical expert from performing defense medical examinations." We affirm.

We review both challenged decisions for abuse of discretion. *See Stranahan v. Fred Meyer, Inc.*, 153 Or App 442, 958 P2d 854 (1998), *rev'd on other grounds*, 331 Or 38, 11 P3d 228 (2000) (stating standard of review for denial of motions to amend pleadings); *State v. Haugen*, 349 Or 174, 193, 243 P3d 31 (2010) (holding that, when a sufficient factual foundation is laid from which a jury may infer a witness's bias, the trial court has discretion to exclude additional evidence of bias). After she was injured in a motor vehicle accident caused by defendant's admitted negligence, plaintiff incurred medical expenses in the total amount of $32,149. Plaintiff had PIP coverage under her own motor vehicle insurance policy with a limit of $25,000 per person. Plaintiff's PIP carrier paid its full policy limit of $25,000 in full satisfaction of its PIP obligation to plaintiff. The medical providers wrote off plaintiff's remaining medical expenses in the amount of $7,149.

Before trial, plaintiff's PIP carrier advised her that it would seek PIP reimbursement directly from defendant's liability insurer and that it did not want plaintiff to seek reimbursement of those benefits on its behalf in this action. The case was set for trial on January 12, 2010. On January 11, plaintiff's counsel sent a letter to defendant's counsel advising that plaintiff proposed to file an amended complaint the next day seeking to recover only the non-PIP medical expenses of $7,149. Accompanying that letter was a summary of those expenses headed by the caption: "Medical Bills

(Not Paid by Plaintiff's Insurer)." On the same day, defendant filed several motions *in limine* relating to evidentiary matters in the upcoming trial. One of those motions sought to "preclud[e] plaintiff from seeking damages solely for medical expenses not paid by plaintiff's [PIP] insurer."

On the morning of trial, the trial court heard oral argument on defendant's motions *in limine*. Together with her amended complaint, plaintiff proposed to offer exhibits 2 and 9, which were a breakdown of her non-PIP-reimbursed medical expenses (Exhibit 2) and her medical expenses that were paid by PIP (Exhibit 9). As plaintiff explains it:

> "Plaintiff wanted the jury to know the total amount of medical expenses and suggested to the court that the jury could be told that her PIP carrier paid the $25,000, or it was paid by her insurance carrier, or simply tell the jury that they are not to consider who paid the $25,000."

Although plaintiff did not formally move to amend her complaint, in granting defendant's motion *in limine* to exclude exhibits 2 and 9, the trial court appeared to decide that plaintiff was not entitled to make the proposed amendment.[1] The court explained:

> "I think that the plaintiff needs to put on a case with the full amount of damages, full amount of medical expenses and other related economic damages that were the result of this accident.

> "The issues of PIP offset and also the issue of whether or not there is some portions of those damages that were actually written off and whether or not that would be deducted from there or not, those are post-verdict issues. And so if we get to the verdict and then counsel cannot agree upon what the net amount is after that, then that is something that can be done by motion to this court.

---

[1] Plaintiff's proposed amended complaint is included in the trial court file, but we have searched the record in vain for any indication that plaintiff actually made a motion to amend her complaint to reduce her economic damages. Nevertheless, because the trial court's above-quoted ruling appeared to foreclose such an amendment, and plaintiff's proposed amendment was bound together with her strategy to admit exhibits 2 and 9 into evidence, we will not detain ourselves with the technical problem of whether plaintiff has properly assigned error to the trial court's operative ruling.

"I don't think it is up to the jury to have the information —I don't think it is appropriate of the jury to have the information to make that sort of computation, nor is it appropriate for them to be considering anything other than the amount of economic damages incurred and whether or not they were reasonable and necessarily related to the injuries.

"So I am going to require plaintiff to seek damages for the full amount and then any offsets we will deal with post-verdict."

As a result of the court's ruling, plaintiff pleaded as economic damages and offered evidence of the entire $32,149 in medical expenses that she allegedly incurred as a consequence of defendant's negligence.

The evidence at trial showed that plaintiff had arthroscopic surgery on her left shoulder about 20 months after the accident. In a perpetuation deposition, plaintiff's surgeon testified that the expenses for the shoulder surgery and its medical aftermath were related to the motor vehicle accident. However, on cross-examination, the surgeon acknowledged that he had not been aware that, before the accident, plaintiff had been treated for left shoulder problems. At trial, defendant called Dr. Woodward—a board-certified orthopedic surgeon—as an expert witness. Woodward had reviewed the perpetuation deposition testimony of plaintiff's surgeon. Woodward opined that the arthroscopic surgery on plaintiff's left shoulder included in her economic damage claim was unrelated to the motor vehicle accident and that, instead, it was required to remedy a preexisting degenerative condition. According to Woodward, plaintiff's medical expenses in the amount of $4,529 that were incurred before February 16, 2007, were reasonable and necessary, but the ensuing charges—including the surgery expenses—were not related to the accident.

On cross-examination, plaintiff's counsel adduced testimony from Woodward to the effect that he had performed medical examinations for defense attorneys and workers' compensation carriers for the previous 12 years. Woodward also acknowledged that, during that 12-year period, he had not performed any examinations on behalf of

injured persons. Woodward further testified that he performed "up to twenty" medical examinations for defense attorneys "a week," and that he spent an hour on each examination in addition to time spent reviewing medical records and preparing his reports. Woodward also testified that he is paid $200 to $250 per hour for his pretrial work and $600 per hour for testimony.

Plaintiff's attorney asked Woodward what he charged "for these twenty exams that you do on behalf of defense people and Workers Comp carriers?" Defense counsel objected, and the trial court sustained the objection, directing plaintiff's counsel to limit his inquiry "to this case." Later, in an offer of proof made outside the presence of the jury, Woodward testified that his annual income from defense medical examinations had been about $300,000 and that he had not performed surgeries for the previous 13 years.

As discussed, the jury ultimately returned a verdict in the amount of $4,529 in economic damages and $1 in noneconomic damages. The final judgment reflected the parties' stipulation that the economic damage award would be reduced by those medical expenses that were paid by the PIP carrier, resulting in a judgment for economic damages in the amount of $334 and noneconomic damages of $1.

We first address plaintiff's argument that the trial court erred in denying her motion to amend her complaint to seek recovery of only those medical expenses that were not paid by her PIP carrier. According to plaintiff, she was entitled to adduce evidence of all her medical expenses, while at the same time seeking only to recover her non-PIP medical expenses. Plaintiff asserts that, in rejecting her proposed amendment, the trial court erred in failing to properly apply the Supreme Court's decision in *White v. Jubitz Corp.*, 347 Or 212, 219 P3d 566 (2009).

The plaintiff in *White* sought medical treatment for an injury. *Id.* at 215. Medicare provided coverage for the plaintiff's medical costs and capped the amount that the plaintiff's medical providers could charge for their services. *Id.* The issue presented was whether the charges billed to the plaintiff by his medical providers but later written off were "reasonable charges necessarily incurred" under ORS

31.710,[2] such that the plaintiff could claim those charges as economic damages. Applying the plain meaning of the term "incur," the court in *White* rejected the defendant's argument that the plaintiff had not incurred those charges:

> "A plaintiff who is injured and who obtains necessary medical treatment becomes 'liable or subject to' reasonable charges for that treatment and thereby 'incurs' them. ORS 31.710 does not require that a plaintiff also pay or otherwise satisfy those charges. Whether or by what means the plaintiff or a third party satisfies medical charges is a matter between the plaintiff, the third party, and the medical providers."

*Id.* at 234. Accordingly, the court held that ORS 31.710 did not prevent the plaintiff from claiming the disputed charges as economic damages.

Plaintiff asserts that the reasoning of *White* is controlling here. Plaintiff explains:

> "In the present case, as in *White,* there is nothing in the record to suggest that, had plaintiff not been eligible for PIP benefits, (1) plaintiff would not have been liable for the full amount of medical expenses billed and (2) defendant would have contested plaintiff's right to recover the written-off charges. In fact, those are the only reasonable conclusions to be drawn from the record."

Plaintiff further reasons that there was evidence that the entire $32,149 billed to plaintiff was necessary and reasonable and, therefore, there was sufficient evidence that the non-PIP amount of $7,149 also was necessary and reasonable. Plaintiff asserts that she sought to amend her claim to the reduced amount so that her case would not "rise or fall upon the jury believing that 'all' of the medical expenses were

---

[2] ORS 31.710(2)(a) provides:

" 'Economic damages' means objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past and future impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less."

reasonable and necessary. To do so, the jury would have to believe that the surgery was related to the motor vehicle accident." As plaintiff sees things, the trial court's ruling took away from plaintiff the option of arguing that the jury may or may not "choose to believe that the surgery was related."

Plaintiff also asserts that her right to plead and seek recovery of only the non-PIP portion of her medical expenses was a "mirror image" of the rule that a plaintiff may plead and recover all his or her medical expenses in a personal injury action, including sums paid by a PIP carrier. *Koberstein v. Sierra Gas Co.*, 65 Or App 409, 671 P2d 1190 (1983), *rev den*, 297 Or 83 (1984). Plaintiff argues that she was entitled to give the jury a complete account of her medical expenses while seeking only those sums not paid by her PIP carrier.

The difficulty with plaintiff's argument is that, whatever its abstract appeal may be, the way in which she wished to assert her reduced claim for economic damages would have improperly injected evidence of insurance benefits into the case and, in the bargain, improperly would have risked confusing the jury. Personal injury protection benefits paid by a plaintiff's insurer are collateral benefits. *Gragg v. Hutchinson*, 217 Or App 342, 176 P3d 407 (2007), *rev den*, 344 Or 401 (2008). ORS 31.580, which codified the collateral source rule, provides, in part:

"(1)   In a civil action, when a party is awarded damages for bodily injury or death of a person which are to be paid by another party to the action, and the party awarded damages or person injured or deceased received benefits for the injury or death other than from the party who is to pay the damages, the court may deduct from the amount of damages awarded, before the entry of a judgment, the total amount of those collateral benefits other than:

"* * * * *

"(c)   Insurance benefits for which the person injured or deceased or members of that person's family paid premiums[.]

"* * * * *

"(2)    Evidence of the benefit described in subsection (1)
of this section and the cost of obtaining it is not admissible
at trial, but shall be received by the court by affidavit sub-
mitted after the verdict by any party to the action."

The statute contains no exceptions: Evidence of insurance
benefits is not admissible at the trial of a civil action for dam-
ages for bodily injury or death. *Gragg*, 217 Or App at 348; *see
also White*, 347 Or at 243 (holding that "ORS 31.580(2) pro-
hibited [the] defendant from proving to the jury the benefits
that [the] plaintiff received from Medicare—the satisfaction
of his obligations to his providers by both payment and 'write-
offs' ").

In this case, plaintiff's proposed amended complaint
would have alleged economic damages not to exceed $7,149
"[a]fter deducting the medical expenses *paid by plaintiff's
insurer*[.]" (Emphasis added.) That strategem, reinforced by
admission into evidence of plaintiff's exhibits 2 and 9—which
were the centerpiece of her economic damages theory—would
have directly violated ORS 31.580(2). The title to Exhibit 2
was "Medical Bills (Not Paid by Plaintiff's Insurer)." More-
over, Exhibit 2 included both amounts that plaintiff's PIP
carrier had not paid, as well as amounts that the PIP carrier
had required plaintiff's medical providers to write off. It
would have been impossible to provide the jury with an accu-
rate account of how the reduced amount of damages, $7,149,
was derived without injecting insurance into the case. In
addition, plaintiff intended to tell the jury that Exhibit 9 con-
tained $25,000 of plaintiff's medical expenses that had been
paid by plaintiff's "medical insurance."

Beyond those problems, both exhibits contained only
a list of providers, the starting and ending dates of treatment
with each provider, and a single dollar amount. In Exhibit 2,
those dollar amounts included sums that plaintiff's PIP car-
rier had required providers to write off as well as sums the
carrier had not paid because plaintiff's coverage had lapsed.
Exhibit 9, on the other hand, included only the amounts paid
by the PIP carrier. In short, the sum to which plaintiff pro-
posed to reduce her economic damage claim was meaningful,
if at all, only in light of its relationship to plaintiff's PIP
insurance coverage.

Although more could be said about the potential for confusion inherent in the two exhibits by which plaintiff sought to prove her reduced economic damages, the foregoing illustrations are sufficient to explain why the trial court did not err in refusing to allow plaintiff to proceed down that path. Of course, that is not to say that plaintiff was required to seek any particular amount of economic damages, let alone all of the expenses that she claimed were reasonably and necessarily caused by defendant's negligence. There is no rule that requires an injured person to seek more damages than he or she wishes to claim. But that principle is not at stake here. The problem, rather, is that plaintiff's plan was, in the end, compatible only with a systematic violation of ORS 31.580(2). Accordingly, the trial court did not abuse its discretion by, in effect, denying plaintiff's proposal to amend her complaint to seek recovery of only those medical expenses that were not paid by her PIP insurer.

We turn to plaintiff's challenge to the trial court's exclusion of evidence of Woodward's annual income from medical examinations on behalf of defense attorneys.[3] According to plaintiff, that evidence was admissible to show Woodward's bias—arising from economic self-interest—in favor of defendants and against injured persons in personal injury actions. We agree that the evidence was relevant for that purpose. However, as we now explain, on the record before us, the trial court did not abuse its discretion in excluding that evidence.

In *Haugen*, an aggravated murder case where the jury had imposed the death penalty, the Supreme Court revisited its previous decisions concerning the admission for impeachment purposes of evidence of bias. The defendant argued that the trial court had erred in excluding evidence of bias on the part of one of the state's primary witnesses, Cameron, after the witness made a comment to the codefendants while he was leaving the courtroom. Cameron had testified during the state's case-in-chief and was extensively

---

[3] We reject without discussion defendant's argument that plaintiff failed to adequately preserve this assignment of error.

cross-examined with respect to the substance of his testimony and his credibility. During the defendants' case-in-chief, they presented a witness, Brown, who asserted that Cameron had told him that he had lied to prison officials about the defendants' involvement in the murder. In the state's rebuttal, it again called Cameron, and he testified briefly that he had never talked to Brown about the case. As Cameron left the stand, he allegedly made a remark to the defendants, which defense counsel described to the court, outside the jury's presence:

> " 'As Mr. Cameron was leaving the courtroom, he looked at our clients and maybe defense counsel as well and said: How do you like me now? And it was audible, certainly to our clients and people at counsel table. We believe the jury may or may not have heard it. We would like to make sure that the jury is informed that he made that statement.' "

*Haugen*, 349 Or at 190. After a colloquy, the trial court stated:

> " 'Mr. Cameron, when he got up, I saw him look towards both Mr. Haugen and Mr. Brumwell and I don't doubt he said something. I find that to be inappropriate on Mr. Cameron's behalf. I do not find it to be any evidence of anything that the jury should hear about.

> " 'So, you've made a record of what Mr. Cameron said. It was inappropriate. If he was here, I would tell him that, but I'm not going to allow the jury to hear it.' "

*Id.* at 192. The defendants argued that the trial court had erred in excluding Cameron's statement on the ground that it showed his bias against the defendants.

The Supreme Court rejected the defendants' argument on appeal:

> "Evidence of a witness's bias is generally admissible. OEC 609-1 ('The credibility of a witness may be attacked by evidence that the witness engaged in conduct or made statements showing bias or interest.'); *State v. Hubbard*, 297 Or 789, 796, 688 P2d 1311 (1984) ('A principle of evidence law in Oregon is that: It is always permissible to show the interest or bias of an adverse witness.' (Internal quotation marks omitted.)).

"However, our cases also make clear that, while evidence of bias is relevant and may be admitted, it is not necessarily error to exclude such evidence:

" 'Evidence relevant to the bias or interest of a witness need not always be admitted. * * * Where bias or interest is shown, but further questioning is objected to, the decision is within the discretion of the trial judge.'

"*Hubbard*, 297 Or at 799-800. As the 1981 Conference Committee Commentary on OEC 609-1 states, although the rule permits the credibility of a witness to be attacked by evidence of conduct or statements showing bias or interest, '[t]he trial judge retains discretion to control the extent to which proof of bias or interest may go.' As with other evidence, where the evidence of conduct or statements showing bias is merely cumulative of other evidence of bias, the trial court has discretion to exclude it."

*Haugen*, 349 Or at 193.

The Supreme Court concluded that Cameron's statement was at least marginally relevant to the issues at trial because it tended to show Cameron's bias. Thus, the court held, it would have been permissible for the trial court to admit evidence that Cameron had made the statement. *Id.* The court continued:

"That does not mean, however, that the trial court erred in excluding evidence of the comment. As noted, our cases hold that a trial court has discretion to limit evidence of bias or interest under OEC 609-1 if it is simply cumulative of other, similar evidence of bias * * *.

"The state argues that Cameron's remark itself 'was no more probative of [his general hostility towards defendants] than other evidence received at trial.' Further, according to the state, because there was 'ample and specific evidence' of Cameron's hostility, the admission of his comment would not have substantially assisted the jury in making a decision about his credibility. We agree."

*Id.* at 194. The court ultimately concluded that, in light of the detailed cross-examination of Cameron and the other evidence that the defendants adduced at trial to show Cameron's dislike of the defendants and the multiple reasons that the jury should view Cameron's testimony with

suspicion, the trial court's decision to exclude as additional evidence of bias Cameron's remark to the defendants as he left the witness stand was within the court's discretion. *Id.* at 195.

Similarly, in this case the evidence that the trial court excluded did not constitute an *initial* showing of bias. As discussed, before making her offer of proof as to Woodward's annual income from performing medical examinations for defense attorneys, plaintiff had adduced testimony from Woodward to the effect that he had performed medical examinations for defense attorneys and workers' compensation carriers for the previous 12 years. Woodward also acknowledged that, during that 12-year period, he had not performed any examinations on behalf of injured persons. Woodward further testified that he performed "up to twenty" medical examinations for defense attorneys "a week," and that he spent an hour on each examination in addition to time spent reviewing medical records and preparing his reports. Woodward also testified that he is paid $200 to $250 per hour for his pretrial work and $600 per hour for testimony. Because that evidence demonstrated that testifying for defendant in this case—as he had done for defendants in many other cases—was in Woodward's economic self-interest, it was evidence of bias, and the trial court had discretion to exclude additional evidence of bias under the standards applied in *Haugen* and *Hubbard*.

The question remains whether the trial court abused its discretion in excluding the proffered evidence. In that regard, plaintiff argues that the excluded evidence was not merely cumulative, but was qualitatively more probative of Woodward's bias than the other evidence that was admitted. As plaintiff sees things,

> "[Woodward] had no idea how many hours he had devoted to this case before he testified and, it appears, he had no idea of the amount of his final bill in this case. The expert was not very informative. The paltry evidence he offered about his fees certainly was not sufficient to cause reasonable jurors to infer that he 'had made a lot of money in the last twelve years as an expert for defense attorneys,' and certainly not the $3,000,000 he acknowledged earning from such activity during the last 10 years before the trial."

We disagree. As discussed, the evidence received, as well as the excluded evidence, was relevant to show that Woodward had an economic bias in favor of defendants in personal injury cases. From the evidence that had already been received, the jury knew that for the previous 12 years Woodward had made his entire living working for defense attorneys. Moreover, by mere extrapolation from that evidence, the jury could have inferred that—from examinations alone, even without income from report writing and court testimony—Woodward had earned a very comfortable six-figure annual income over that period. Although the excluded evidence would have punctuated the point, it would not have added to it significantly. Stated differently, the excluded evidence would not have meaningfully enhanced the odds that the jury would believe that Woodward was inclined to shade his medical opinion for reasons of economic self-interest. Accordingly, the trial court did not abuse its discretion in excluding that evidence. *See State v. Cox*, 337 Or 477, 487, 98 P3d 1103 (2004), *cert den*, 546 US 830 (2005) (trial court did not err in excluding evidence of victim's violent acts towards others to show defendant's reasons for fearing victim, because evidence, although relevant, "would not have added greatly to the evidence already before the jury").

Affirmed.