Argued and submitted August 26, 2015, affirmed March 22, 2017

Harry DeWOLF,
Personal Representative of
the Estate of Taylur DeWolf,
*Plaintiff-Respondent,*

*v.*

MT. HOOD SKI BOWL, LLC,
*Defendant-Appellant.*

Multnomah County Circuit Court
121114815; A156394

392 P3d 759

Kimberley Hanks McGair argued the cause for appellant. With her on the briefs were Brad C. Stanford and Farleigh Wada Witt.

Lisa T. Hunt argued the cause for respondent. With her on the brief was Law Office of Lisa T. Hunt, LLC.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.

## ARMSTRONG, P. J.

Plaintiff, Harry DeWolf, brought a wrongful death action against defendant following the death of plaintiff's daughter, Taylur DeWolf, while she was snowboarding at defendant's ski resort. The jury found in favor of defendant, determining that defendant was not negligent. However, after entering a judgment on the jury's verdict, the trial court granted a motion by plaintiff under ORCP 64 B for a new trial. Defendant appeals the trial court's order granting a new trial. We conclude that the trial court did not abuse its discretion in ordering a new trial and, accordingly, affirm.

We begin with the relevant facts. Taylur was snowboarding at night at Mt. Hood Ski Bowl when she lost control while on the Dog Leg run, causing her to leave the run and collide with a tree. She died at the scene from her injuries. Plaintiff, as the personal representative of Taylur's estate, brought a wrongful death action against defendant, the operator of Ski Bowl. Plaintiff's complaint alleged that defendant breached its duty of care to Taylur by (1) failing to warn of the degree of difficulty of the Dog Leg run; (2) failing to warn of the degree of difficulty or dangerous nature of a feature on the Dog Leg run (a reverse grade) that caused Taylur to lose control; (3) maintaining a dangerous feature on the Dog Leg run that was not reasonably obvious or apparent; (4) failing to eliminate or reduce the unreasonable risk of harm from that dangerous feature by routing non-experts away from it, eliminating the dangerous feature, warning customers about the feature, or guarding against the dangerous feature; and (5) failing to discover the dangerous feature on the Dog Leg run.

During discovery, plaintiff requested, among other things, that defendant produce documents regarding injuries at Ski Bowl over 10 ski seasons, inclusive of the 2011-12 ski season—the season in which Taylur died. Defendant refused to produce documents, and plaintiff brought a motion to compel. In April 2013, the trial court granted plaintiff's motion in part, ordering defendant to produce documents of injuries on the Dog Leg run during the two years before the day that Taylur died.

In November 2013, plaintiff brought two motions *in limine* related to the discovery order. First, plaintiff sought to exclude "Ski Bowl's claims of 40 years of safety" because, before 2002, the claimed dangerous feature on the Dog Leg run was covered by trees. Second, plaintiff sought to exclude "Ski Bowl statements or data that there have not been other 'similar' injuries or deaths on Dog Leg run because defendant has not produced the injury data." Plaintiff argued that, because the court had ruled that injury data more than two years before Taylur's death was not within the scope of discovery, it would be fundamentally unfair to permit defendant to refer at trial to any data outside that date range.

In late November, about one and one-half weeks before the start of trial, the court held a single hearing on all of the motions *in limine* brought by plaintiff and defendant. With respect to plaintiff's two *in limine* motions described above, the court and the parties engaged in a lengthy colloquy. Because it is important to our analysis, we relate that colloquy at some length.

With regard to plaintiff's motion to exclude defendant's claims of "40 years of safety," the court granted it in part, "in that we're not going to talk about the record of safety in areas outside the accident area," and denied it with respect to the accident area.

The court then took up plaintiff's motion to preclude defendant from discussing the absence of injuries or similar incidents on the Dog Leg run for time periods for which defendant had not produced documents. On that issue, the court began by explaining that its April 2013 discovery ruling was based on what the court believed the issues at trial were going to be, which at that time did not include defendant's defense of 40 years of safety. The court then explained that it would order an expanded scope of discovery in light of plaintiff's motion *in limine*:

> "I suppose if at the time I understood that you were going to claim 10 or 40 years of safety, I might have ordered you to produce evidence of any accidents on the Dog Leg run dating back as far as you say there haven't been. So that they can vet that.

"*** *I'll deny the motion on the condition that the defendants produce any documents supporting that there have been no accidents on the Dog Leg run for the period of time that they claim there haven't been.*

"So if you're going to say 40 years, you're going to have to produce any documents that you have in your possession, custody, or control of any accidents on the Dog Leg run for the last 40 years. And, again, we're just talking about the Dog Leg run.

"[PLAINTIFF]:    Your Honor, just so I'm clear, so they need to—basically they've produced a certain type and set of documents. They need to produce those for ten years?

"THE COURT:    Well it depends on what statement—again, I don't know what statements they're going to make at trial. If they stand up and say: There have not been any accidents on the Dog Leg run for the last 40 years, then—if that's what your intention is, then you ought to produce records—any records and documents in your custody or control regarding any accidents that occurred on the Dog Leg run for the last 40 years. Because you're—you're injecting it into the case. You're injecting the relevance of 40 years into the case. So they're entitled to that discovery."

(Emphasis added.)

Defendant responded that it would not assert at trial that there had been no accidents on the Dog Leg run—because there had been accidents—but it would assert that there had been no accidents like Taylur's accident, specifically, an accident with an "unexpected jump, fall line into the trees that launches people into the trees." Plaintiff objected to defendant being the arbiter of what constitutes an accident that is "similar," such that defendant's obligation to produce documents would be triggered. To that argument, the court ruled:

"But I suppose what [plaintiff's] valid concern is it relies on you making the determination of what it means to be 'like this.' And so to the extent that you are construing 'like this' to mean someone had to die or somebody had to run into a tree, I don't think that's fair. If somebody has been—lost control after encountering the reverse grade, that, to me, is enough 'like this' to be discoverable.

"*****

"So what I'm—what I'm saying is if you're going to make that claim, 'No accident has occurred like this for the last ten years,' they should get records going back ten years on any accidents.

"[PLAINTIFF]:   On the Dog Leg run.

"THE COURT:   On the Dog Leg run relating to somebody encountering a reverse grade."

Plaintiff asked the court to broaden the order because defendant's accident documentation was not that specific. Defendant objected to that because of the volume of records involved. To that exchange, the court explained:

"First of all, it wasn't necessarily made clear to me when I ruled on [the motion to compel discovery]. * * * I don't think I was operating under the assumption that you were going to come into court and say: We've got a record of ten years of safety with this particular terrain. Because if I knew you were going to say that, I'd say: Well, you've just injected relevance of ten years of records of accidents on— in that area.

"* * *—if you do intend to go back that far, I think they're entitled to records that go back that far. I mean, nobody's going to make you say: We've got ten years of no accidents on—on that—that terrain that was exposed by the widening of the slope.

"* * * * *

"What—I think they're entitled to records. If you are going to make that argument—and you don't have to make the argument—but if you are going to make the argument that nobody ever before complained of this reverse grade and unexpectedly catching air on this reverse grade, then you have the obligation to produce documents that support that assertion.

"And it's too bad that it's close—this close to trial. Maybe—maybe in your opposition to the motion to compel it should have been more clear to me that you intended to make that argument. *It's not fair to the plaintiffs for you to—for the Court to basically say: You get to decide what's similar or not similar.*

"[DEFENDANT]:   *Let me understand the ruling, then. You're talking about any accident on Dog Leg wherever it is?*

> "THE COURT: *As far back as you're going to go with your argument.*
>
> "[DEFENDANT]: *Any accident on Dog Leg?*
>
> "THE COURT: No.
>
> "[DEFENDANT]: Way at the top or—
>
> "THE COURT: *No. Any accident involving a reverse grade and somebody encountering a reverse grade and having an accident.*"

(Emphases added.)

The court then had a short exchange with plaintiff clarifying that the order covered any reverse-grade accidents on the Dog Leg run, and not just any type of accident, because evidence of just any accident would not be admissible and because the court was "not controlling the how—what arguments the defendant[] want[s] to make." The court concluded the discussion with a summary of its ruling:

> "[I]f you don't want to make that argument, then you don't have to produce those documents. But if you are going to make [an] argument going back ten years, then you're going to have to produce records of any reverse grade accidents on the Dog Leg run going back ten years."

In short, the court repeated several times that defendant's obligation to produce records covered any period of time for which defendant intended to argue at trial about a record of safety on the Dog Leg run. And, based on defendant's representations that its argument about safety would be limited to only "similar" accidents, the court limited the scope of the order to what the court considered to be a "similar" accident—an accident involving a reverse grade on the Dog Leg run.[1]

---

[1] As discussed below, defendant's arguments on appeal are largely based on its position that the trial court's *in limine* order covered only documents involving incidents that occurred before Taylur's accident. In its opening brief, defendant supports that position based on references in plaintiff's document request and motion *in limine* to "prior" incidents and based on some of the comments by the trial court at the hearing. If that was where defendant had stopped, we would not find ourselves making this comment. However, defendant proceeded in the reply brief, and at oral argument, to forcefully represent to us that the trial court *explicitly* ordered defendant to produce documents only of incidents that occurred before Taylur's accident—going so far as to accuse plaintiff of misrepresenting

After the court's ruling, defendant did not produce *any* responsive documents. At trial, defendant put on evidence that included many witnesses testifying, without regard to time period, that the entirety of Dog Leg is a safe, fun, hazard-free run that is suitable for intermediate skiers and snowboarders and their own children; a computer animation of a smooth run down the entire length of the Dog Leg run that was created based on conditions measured a year *after* Taylur's accident; two witnesses who testified that there had been no accidents on the Dog Leg run in the 40-year history of the run, or indeed anywhere at Ski Bowl, "similar" to Taylur's, with "similar" meaning a catastrophic injury; and argument emphasizing the overall safety of the Dog Leg run and lack of "similar" incidents.[2]

---

the record in asserting that the court's order required defendant to produce documents covering whatever period of time that defendant chose to argue at trial about the safety of the run. Our review of the transcript reveals that plaintiff correctly characterized the trial court's order (and the court's discussion of that order) and that the record does not support defendant's contrary representations.

[2] For example, defendant argued at length in closing that the entire Dog Leg run has been safe and hazard-free for 40 years:

"What the overwhelming, and, by far, most credible evidence is, is that there's absolutely nothing wrong with the Dog Leg run. Nothing that needed to be marked off or warned against. * * *

"So we had 14 witnesses, as I said, that had no issues with the Dog Leg run. Now, what's noteworthy about these 14 witnesses is that they had dedicated significant aspects of their lives to the care and safety of others. * * *

"* * * * *

"All of these witnesses representing years and years of experience at Ski Bowl, representing thousands of trips down the Dog Leg run, representing decades of experience in caring for others and paying attention to the needs of others, they all believed, they all testified, that Dog Leg—the Dog Leg run is an excellent, safe, fun run that contains no hazards that ever need to be marked against. No dangerous conditions. No surprise jump.

"Let's—consider that phrase, surprise jump. That's what the plaintiff says, a surprise jump. I mean, what evidence is there possibly of a surprise jump? If that were the case, wouldn't you expect a lot more—a lot more injuries, a lot more damage, a lot more problems with Dog Leg? We've had people who have gone down that run thousands of times testify. Never once—never once have they seen anything like what the plaintiff is trying to say was there.

"In fact, many of these people have had their children ski down Dog Leg for years. To find for the plaintiff, you would have to conclude that a whole bunch of people, conscientious people, safety-minded people, people who care about others, who watch out for others, suddenly don't care. You would have to determine that to find for the plaintiff.

"* * * * *

During defendant's presentation of its case, plaintiff moved to exclude testimony—based on defendant's purported failure to comply with the court's *in limine* order—after a defense witness testified about a lack of similar incidents, with the understanding that "similar" meant a catastrophic injury. At the hearing on that motion, defense counsel represented to the court that they had looked through available documents and had not found any other incidents covered by the court's *in limine* order. Based on that representation, the court did not find a violation of its order and, accordingly, denied plaintiff's motion.

The jury returned a verdict for defendant, finding by a vote of nine to three that defendant was not negligent in any of the ways alleged in plaintiff's complaint.

Following media coverage of the jury's verdict, plaintiff's counsel was contacted by Bowles, who had had a serious accident while skiing on the Dog Leg run a year after Taylur's accident. Bowles had notified defendant of his accident in a letter (the Bowles letter) that had stated that the site of his injury was "Lower bowl of Mt. Hood Ski Bowl; at or near dog leg." Bowles also gave plaintiff a video of his crash, taken by a helmet camera that he had been wearing, which showed Bowles falling in the area of the terrain change at which Taylur had had her accident.

Plaintiff moved for a new trial under ORCP 64 B,[3] submitting as supporting evidence Bowles's declaration, letter, and video footage. With regard to that evidence, plaintiff

---

"What else do we know about Dog Leg? We know there hasn't been a similar—a single similar accident in five-plus million skier visits. Five million. Think about that number. That's—

"[Objection omitted.]

"—going back 40 years.

"If there had been a surprise jump there, some sort of defect, some sort of mythical rocky bench, reverse grade, whatever it is they want to call it that was a problem, wouldn't you expect in the five million skier visits that something—some pattern would develop? Some issue? Some consistency of similar types of accidents? You would expect that. And there isn't."

[3] ORCP 64 B provides:

"A former judgment may be set aside and a new trial granted in an action where there has been a trial by jury on the motion of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:

argued that he was entitled to a new trial based on (1) defendant's misconduct in violating the court's *in limine* order by not disclosing the Bowles letter and by misrepresenting the location or nature of other incidents on the Dog Leg run to avoid disclosure of those incidents; (2) the newly discovered Bowles evidence; and (3) the trial court committing legal error or an abuse of discretion in permitting defendant to determine what was a "similar" incident to Taylur's accident when complying with the court's order to produce documents.[4] Those asserted grounds for a new trial invoked ORCP 64 B(1), B(2), B(4), and B(6).

In response, defendant argued that it was not required to disclose the Bowles letter because (1) the letter indicates that Bowles's accident did not occur on the Dog Leg run, and (2) Bowles's accident was one year after Taylur's accident and defendant had argued at trial only that there had been no prior similar incidents. Defendant further denied that it had misrepresented other incidents or that it had records of other similar incidents. With regard to the other two grounds advanced by plaintiff for a new trial, defendant argued that the Bowles evidence did not meet the standard for granting a new trial based on newly discovered evidence and that the trial court had not made any errors.

At the hearing on plaintiff's motion, the trial court focused exclusively on defendant's alleged misconduct in

---

"B(1) Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having fair trial.

"B(2) Misconduct of the jury or prevailing party.

"B(3) Accident or surprise which ordinary prudence could not have guarded against.

"B(4) Newly discovered evidence, material for the party making the application, which such party could not with reasonable diligence have discovered and produced at the trial.

"B(5) Insufficiency of the evidence to justify the verdict or other decision, or that it is against law.

"B(6) Error in law occurring at the trial and objected to or excepted to by the party making the application."

[4] Plaintiff also argued in his motion that he was entitled to a new trial based on jury misconduct and the trial court's admission of certain evidence at trial. Because we conclude that we should affirm the trial court's grant of a new trial based on prevailing-party misconduct, we do not discuss those alternative grounds.

failing to produce the Bowles letter. With regard to defendant's assertion that defendant had argued at trial only that there had been no "prior" incidents, the trial court found that defendant had presented evidence and made arguments asserting the safety of, and no similar incidents on, the Dog Leg run up to the date of trial. The trial court pointed out, in particular, that the animated snowboard run down Dog Leg that defendant had presented at trial was based on conditions measured two days before Bowles's accident. Defendant conceded that the trial court was correct about that presentation.

The court then focused on whether there was some other timing reason that would have caused its order not to cover the Bowles letter. Throughout the hearing, the court repeatedly asked defendant to leave aside the question about the location of Bowles's accident and answer whether it believed the Bowles letter to be covered by the court's *in limine* order, that is, whether the order covered the time period of Bowles's accident. At no point did defendant respond that the letter fell outside of the time period of the court's order. Rather, defense counsel conceded that, "if [the letter] had said with specificity, you know, that it happened in the same or similar location, under the grounds that you set forth, then it would have been something that we would have produced."[5]

Defense counsel did not answer whether they had reviewed the Bowles letter in connection with the court's

---

[5] At the hearing on the new-trial motion, the court said that its April order on plaintiff's motion to compel discovery had a temporal limit, stating, "[s]o I didn't order that, and technically that document's [the Bowles letter] not covered by *that* order." (Emphasis added.) Directly after making that statement, the trial court went on to say that its November order on the motion *in limine* covered "*ten years to today or something like that.*" (Emphasis added.)

In its reply brief, defendant quoted the court's comment about its April order on plaintiff's motion to compel without context to imply that the court was talking about its November *in limine* order when it said that the Bowles letter was not covered by "that order." When plaintiff was asked about that quote at oral argument and whether it was a reference to the *in limine* order, plaintiff accurately represented that the trial court was referring only to the order to compel and *not* the *in limine* order. In rebuttal, defendant asserted that the quote in its reply brief was accurate, and further represented that it was a reference to any order of the court and constituted a finding by the court that it had never ordered production of the Bowles letter. The record contradicts defendant's assertions.

*in limine* order, arguing only and repeatedly that the letter indicated that Bowles's accident was not on the Dog Leg run at all, stating finally, "And we would have done that [not disclose the accident] with any other incident report that had this location." Defendant's position was based on its conclusion that the letter indicated that Bowles's accident had occurred on the Lower Bowl *run* (as opposed to the lower bowl of the Ski Bowl resort) near where the Dog Leg run empties into the Lower Bowl run. The trial court rejected defendant's position as a factual matter based on the wording of the Bowles letter. The court pointed out that the letter stated that the accident was "at or near dog leg," not that it was on the Lower Bowl *run*. The court also pointed out that Ski Bowl is made up of two families of runs that people refer to as the "upper bowl" and the "lower bowl," and the Dog Leg run is in the "lower bowl." Given that, the court found that the letter was "pretty clear" that the accident happened on the Dog Leg run. The court also emphasized that defendant's argument ignored defendant's obligation to disclose documents that are "reasonably calculated to lead to the discovery of [admissible] evidence." The court then took plaintiff's motion for a new trial under advisement.

While the motion for new trial was under advisement, defendant submitted supplemental briefing on the misconduct ground raised by the new-trial motion, asserting *for the first time* that the *in limine* order did not require production of the Bowles letter because the order did not cover incidents that had occurred after Taylur's accident and because the Bowles letter did not say that his accident was a reverse-grade accident. Plaintiff objected to that submission and repeated his arguments for granting a new trial.

After considering the additional submissions, the trial court granted plaintiff's motion for a new trial in open court without taking further argument from the parties. The court ruled as follows:

"I am concluding that I made a legal error in creating an ambiguity about what defendant's obligations were with respect to discovery.

"I think, in looking back at the transcript, and then in thinking about how the trial progressed, and then with

the motion *in limine* made by the plaintiff, I should have, particularly when the evidence came in with respect to the expert who testified about what the condition of the slope was a year later, and that's evidence * * * that there was no negligent design of the ski slope or that the ski slope didn't include anything unreasonably dangerous in it, which was based upon measurements he made about a year later, and particularly in light—I think—I think, in retrospect, I didn't correctly perceive how the issues were going to be presented in terms of—I think I had too much of a focus on notice of a potentially unreasonable or dangerous—unreasonably dangerous condition versus whether there was any unreasonably dangerous condition at all.

"And I think the thrust of the defendant's case, and obviously their argument that ultimately was successful with the jury, was there was nothing unreasonably dangerous at all about the slope, which makes information about accidents right up to the date of trial relevant and well within the scope of discovery.

"I should have, as that became more clear to me, ruled that defendants were obligated to produce documents regarding accidents right up to the date of trial. That being said, I mean, I certainly didn't have in my mind that there was any accident. I remain—I think you probably got a sense from the hearing that we—that we last held, that I'm not convinced that defendants were relieved of an obligation to produce this document because it said Lower Bowl on or at Dog Leg.

"I think that particularly in light of the discovery standard, reasonably calculated to lead to the discovery of relevant evidence, I can see where there's a judgment call there. But I think, in my view, the correct judgment is that that document has to be produced.

"If ultimately it turns out it's at a different location and on a different slope, then the evidence can be kept out. That's—that's how that gets dealt with. That's how that should have been dealt with.

"So I am concluding that that has—I think because that goes to a central issue in the case, and an issue on which the jury was divided nine to three, I think that materially affected the plaintiff's ability to present their case.

"So I'm—although it's—frankly, I find this a difficult decision to make because it was a long and arduous trial[.]

\*\*\* I recognize that this places burdens, frankly, on both parties, but I feel like I am obligated to grant a motion for a new trial."

Defendant appeals the trial court's grant of a new trial.

We will affirm a trial court's grant of a new trial if any of the grounds argued in support of the motion for new trial is well taken and, as provided in ORCP 64 B, the well-taken ground materially affected the substantial rights of the moving party. *Gragg v. Hutchinson*, 217 Or App 342, 347, 176 P3d 407 (2007), *rev den*, 344 Or 401 (2008) (citing *Williams v. Laurence-David*, 271 Or 712, 718, 534 P2d 173 (1975)). Here, we confine our analysis to the court's determination of legal error and to defendant's alleged misconduct. "When the trial court's order of a new trial is based on an interpretation of the law, we review that order for errors of law." *Bennett v. Farmers Ins. Co.*, 332 Or 138, 151, 26 P3d 785 (2001). "If the trial court made no predicate legal error, then we review its decision for an abuse of discretion." *State v. Farmer*, 210 Or App 625, 640, 152 P3d 904, *rev den*, 342 Or 645 (2007). With regard to whether the ground for a new trial involved conduct or evidence that materially affected the moving party's substantial rights, we will usually defer to a trial court's determinations of prejudicial effect, reviewing for an abuse of discretion. *Gragg*, 217 Or App at 347 (citing *Moore v. Adams*, 273 Or 576, 579, 542 P2d 490 (1975)). "The trial court is the finder of fact at a hearing on a motion for a new trial." *Farmer*, 210 Or App at 640. As such, we apply our usual standard of review and defer to the court's explicit and implicit findings of fact if supported by evidence in the record.

We start our discussion with the ground on which the trial court based its new-trial order—"legal error in creating an ambiguity about what defendants' obligations were with respect to discovery"; specifically, that the court was not clear that its *in limine* order covered accidents occurring up to the date of trial. As explained below, we conclude that the trial court could not grant a new trial on that basis because the trial court's order simply did not contain the ambiguity that the trial court identified. Because that conclusion is entwined with how defendant has argued its case

on that issue, we start our explanation with a brief summary of those arguments.

Defendant asserts that the court's *in limine* order only encompassed accidents that occurred before Taylur's accident because plaintiff's *in limine* motion only referred to injury data occurring before Taylur's accident, and the trial court's reference at the hearing to records "going back ten years" was a reference to plaintiff's document request that only requested documents up to the 2011-12 ski season.[6] Given that understanding of the *in limine* order, defendant asserts that the court did not identify any legal error on which it could base a new trial. Additionally, defendant argues that the trial court did not legally err when it failed to require defendant to produce documents about accidents occurring after Taylur's accident.

We reject defendant's arguments because they are not supported by the record. As set out at length above, 284 Or App at 437-40, the trial court clearly and repeatedly said that its order to produce records—which was a condition that the court required defendant to fulfill so that the court would not exclude from trial defendant's arguments about a 40-year record of safety on the Dog Leg run—was tied directly to whatever arguments and evidence defendant intended to present at trial.[7] In particular, the court repeatedly made clear that the time frame of its order covered the time period that defendant's safety arguments covered. In that way, the full scope of the court's order was entirely within defendant's control. At trial, defendant chose to put on evidence and to argue that the Dog Leg run has been safe and hazard-free for its entire history and that there have been no similar incidents for 40 years, including up to the

---

[6] Defendant also argues that the trial court did not err because plaintiff did not make a request for the production of documents that would have encompassed the Bowles letter, and the trial court's April order on plaintiff's motion to compel did not encompass the letter. We reject that argument because it is inapposite—plaintiff never advocated for a new trial on that basis, and the trial court explicitly was not granting one on that basis. Rather, both plaintiff and the trial court referred only to the court's November order on plaintiff's motion *in limine*.

[7] As set out in our description of the facts, the hearing on the motion *in limine* was held approximately one and one-half weeks before trial. That close to trial defendant would have known the content of its planned trial presentation, and defendant has never asserted that it did not.

time of trial. Thus, the Bowles letter, as a temporal matter, was unambiguously covered by the court's *in limine* order.

In rejecting defendant's arguments regarding the time period covered by the trial court's order, we necessarily also reject the trial court's conclusion that it committed legal error in creating an ambiguity in its order, because the identified ambiguity does not exist. Upon review of the record, we conclude that there is no evidence to support the court's finding that the order was ambiguous. Because the trial court did not legally err in the manner identified by the court, the court could not grant a new trial on that basis.

Because we are tasked with affirming a trial court's grant of a new trial if any ground in the moving party's motion is well taken, we turn to the misconduct ground raised below by plaintiff, which we conclude is well taken. ORCP 64 B(2) provides that a new trial may be granted for "misconduct of the * * * prevailing party" if that misconduct "materially affect[ed] the substantial rights of [the moving] party." "Where misconduct is alleged, the focus is on the sufficiency of the evidence and the level of misconduct." *D.C. Thompson and Co. v. Hauge*, 300 Or 651, 655, 717 P2d 1169 (1986). As noted, we defer to the trial court's explicit and implicit factual findings that are supported by evidence in the record. However, the determination whether the conduct of defendant, as found by the trial court, constituted "misconduct" under ORCP 64 B(2) is ultimately a question of law. *Cf. State v. York*, 291 Or 535, 539, 632 P2d 1261 (1981) (court's findings of fact on prosecutor's actions was binding on appeal, but "[t]he conclusion that the prosecutor's act was not 'misconduct' is a decision of law which is subject to appellate scrutiny"; concluding that prosecutor engaged in prosecutorial misconduct by improperly discouraging a witness from talking to the defense, even though the conduct was not expressly foreclosed by statute or rule).

Plaintiff argues that, although the court did not base its ruling on misconduct, the court still found that "(1) defendant had an obligation to produce the Bowles document under [the court's] motion *in limine* ruling; (2) defendant improperly withheld that document; and (3) plaintiff's rights were materially affected." Based on our standard of

review, plaintiff argues that those findings are sufficient for us to affirm the trial court's grant of a new trial based on prevailing-party misconduct. In addition, plaintiff argues that the record demonstrates that defendant engaged in other improper obstruction of discovery, particularly by improperly refusing to disclose documents based on defendant's own determination of what was admissible evidence.

With respect to misconduct, defendant chose not to make arguments on appeal and instead "simply incorporate[d] the arguments it made in the trial court." Defendant argued below that they could not have committed misconduct because the trial court's *in limine* order did not require disclosure of the Bowles letter because (1) Bowles's accident occurred a year after Taylur's accident, (2) the Bowles letter indicated that his accident was not on the Dog Leg run, and (3) the Bowles letter did not mention that his accident involved a "reverse grade."[8]

As set forth above, the trial court's order unambiguously encompassed the Bowles letter, as a temporal matter. There is no reasonable reading of the record that could have led defendant to believe otherwise. Additionally, there is no evidence in the record that defendant actually held that belief at the time that it told the court that it had no responsive documents. Tellingly, the *only* affidavit provided by defendant at any time that could be read as an explanation of *why* it did not produce the Bowles letter was that, at the time that Ski Bowl *received* the letter, "Skibowl concluded that Bowles' accident occurred on the Lower Bowl run, at or near the juncture of the Lower Bowl and Dog Leg runs." Defendant also stated at the hearing on the new-trial motion that, setting aside the location issue, defendant would have produced the letter. We must determine whether defendant engaged in misconduct based on what defendant actually did, not on what defendant might hypothetically have done.

---

[8] In the trial court, defendant also argued that certain federal case law, which requires a showing of willful or deliberate misconduct or bad faith, should be used to determine whether defendant had engaged in misconduct. We decline to do that because those cases rely on law that differs in material respects from the text of ORCP 64 B(2). *See Gross v. Hackers*, 168 Or App 529, 535-36, 4 P3d 1281 (2000), *rev den*, 332 Or 239 (2001) (declining plaintiff's invitation to apply federal case law under FRCP 60(b) because federal rule differs from ORCP 64 B(2)).

It is sufficient for purposes of defendant's argument that we conclude that the court's order encompassed the Bowles letter based on when Bowles's accident occurred.

We also conclude that the trial court correctly concluded that its order covered the Bowles letter, as a location matter. As discussed above, the only explanation that defendant gave for why it did not disclose the Bowles letter was because it understood the Bowles letter to say that the accident had occurred on the Lower Bowl run and not the Dog Leg run. The trial court rejected defendant's explanation as a factual matter, which is supported by evidence in the record. The Bowles letter states that the accident location was "Lower bowl of Mt. Hood Ski Bowl; at or near dog leg." Based on that description, the court found that the Bowles letter did indicate that the accident had occurred on the Dog Leg run, because that is a lay understanding of the location of Dog Leg—a run that is within the lower bowl of Ski Bowl. Defendant's explanation as to why it had concluded that the accident had not occurred on the Dog Leg run was based on a highly technical and intimate knowledge of the layout of Ski Bowl and, as the court found, was an unreasonable standard to apply to a layperson's identification of the accident's location. Thus, we conclude that it was misconduct for defendant to withhold the Bowles letter based on its unreasonable interpretation of the letter as stating that the accident had not occurred on the Dog Leg run.

Finally, we address defendant's argument that it was not required to produce the Bowles letter because the court limited its order to "reverse grade" accidents. We reject defendant's argument for two reasons. First, as with the timing issue, defendant did not provide evidence that it had withheld disclosure based on a belief that the Bowles letter was not covered by the court's order because the letter did not say that the accident involved a "reverse grade."

Second, the court determined that defendant had a discovery obligation to disclose the Bowles letter. As such, the court implicitly found that its order referencing "reverse grade" accidents did not relieve defendant of the obligation to disclose the Bowles letter. We agree with the trial court. Under ORCP 36 B(2), which sets out the scope of discovery,

"[i]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Nothing in the Bowles letter ruled out that the accident involved a "reverse grade." The letter, however, was reasonably calculated to lead to the discovery of admissible evidence—that is, a reverse-grade accident—because it provided enough information for plaintiff to discover the details of Bowles's accident. Thus, the Bowles letter was within the scope of the court's *in limine* order on the production of documents.

In sum, defendant's failure to produce the Bowles letter violated the court's *in limine* order. That violation, in turn, constitutes misconduct by a prevailing party under ORCP 64 B(2).

We next address whether defendant's misconduct materially affected plaintiff's substantial rights. Because the trial court determined that the failure of defendant to produce the Bowles letter did materially affect plaintiff's substantial rights (albeit based on legal error), we defer to the trial court's determination on that point, reviewing for an abuse of discretion. *Gragg*, 217 Or App at 347. The trial court determined that, because production of the letter "goes to a central issue in the case, and an issue on which the jury was divided nine to three," plaintiff's ability to present his case was materially affected. We conclude that the court acted within its discretion in making that determination.

We reject defendant's argument that plaintiff was not prejudiced because the Bowles letter would have been inadmissible at trial. The question is not whether the Bowles letter would have been admissible on its own, but whether evidence of Bowles's accident would have been admissible, as the disclosure of the letter would have enabled plaintiff to obtain the details of the accident. It is readily apparent from the record that the trial court would have admitted evidence of that accident. Bowles's declaration and helmet-camera footage established that his accident took place in the same area of the Dog Leg run as Taylur's accident. The trial court had already ruled that any such accident was sufficiently

"similar" to be admissible at trial under the case law on which defendant relied.

We also reject defendant's argument that the evidence of Bowles's accident would not have affected the jury's verdict because the jury heard evidence of another accident on the same terrain feature on the Dog Leg run the day after Taylur's accident. Defendant's argument ignores that defendant argued at trial, at length, that there was nothing wrong with the Dog Leg run, because, if there were something wrong, there would have been a pattern of similar accidents on the run. To rebut defendant's argument, it was crucial to plaintiff to produce evidence of any and all similar accidents. In light of the explicit argument made by defendant at trial, we reject defendant's argument that evidence of Bowles's accident would be merely "cumulative" because plaintiff had put on evidence of one other, similar accident.

In assessing the prejudice of defendant's misconduct in this case, we again emphasize the unusual and critical nature of the court order that defendant violated when it failed to produce the Bowles letter. It was not a minor discovery violation. Defendant violated a court order that conditioned defendant's ability to make its main argument at trial—the lengthy history of a safe and hazard-free Dog Leg run—on its compliance with the court's production order. It was significant that defendant preserved its ability to put on its entire defense at trial, and its violation of the attached condition was equally significant. We thus conclude that the trial court did not abuse its discretion in ordering a new trial in the unusual circumstances under which defendant's misconduct arose in this case.

We also briefly address defendant's contention that, if we affirm the trial court's grant of a new trial, we should review defendant's assignments of error asserting that the trial court erred in giving a jury instruction and erred in admitting certain evidence during the original trial. We decline to review those rulings because the issues need to be addressed by the trial court in the first instance in the context of the new trial. Accordingly, we affirm.

Affirmed.