AOYAGI, J.
*1130 *445 Defendant appeals a judgment convicting him of unlawful possession of a short-barreled rifle. In his first assignment of error, defendant challenges the trial court's refusal to give a "less satisfactory evidence" jury instruction. We reject that argument without written discussion. In his second assignment of error, defendant challenges the denial of his motion for a new trial based on newly discovered evidence, irregularity in the proceeding, or misconduct by the prevailing party. For the reasons that follow, we also reject that argument. Accordingly, we affirm.
BACKGROUND
Defendant was charged with unlawful possession of a short-barreled rifle, ORS 166.272 ; felon in possession of a firearm, ORS 166.270 ; and unlawful use of a weapon, ORS 166.220. All three charges included the additional element of "with a firearm," ORS 161.610(2). The second charge was dismissed, and the jury acquitted defendant on the third charge. Defendant was convicted only on the first charge. Because our analysis requires us to evaluate whether defendant was prejudiced by the absence of certain evidence discovered after trial or by any misconduct or irregularity in the proceeding, we summarize the evidence presented at trial.
The state called five witnesses: the complainant, S; three police officers who responded to S's 9-1-1 call; and a firearms expert. The state also played a recording of S's 9-1-1 call. Defendant testified on his own behalf.
S testified that she and defendant were friends, and that he had spent the night at her apartment. When S told defendant that it was time to leave, he became upset and accused her of stealing his cell phone. He said he would not leave until he found his phone. He raised his voice and seemed like he was on "something heavy." S denied taking defendant's phone and asked him to leave. S turned around and saw that defendant had a gun on the table. It was dark in the apartment, but she clearly saw that it was a gun. It looked like the gun put into evidence at trial. Defendant picked up the gun and told S that he was "going to come *446 back and blow our brains out tonight." While defendant put the gun in his backpack, S called her cousin, who told her to call the police.
S called 9-1-1. She told the 9-1-1 operator that defendant had a long gun, that he had threatened her with the gun, and that he had put the gun in his backpack. While S was on the phone, defendant left the apartment, and S saw him running toward a fast food restaurant down the street. S followed at a distance, keeping the 9-1-1 operator on the line. Inside the restaurant, S peeked into the men's restroom and saw someone changing clothes in a stall. She told the 9-1-1 operator that she thought it was defendant but was not sure. The police arrived. When they arrested defendant, he yelled at S in front of the officers that he was "going to get [her]."
Officer Delong testified that several officers responded to the 9-1-1 call. Delong and another officer arrested defendant as he came out of the restroom. Another officer, Schrader, testified that he entered the restroom while defendant was being arrested. In the stall, he noticed a trash can with some unused paper towels piled in it. He removed the paper towels, revealing a rifle that had been cut down at the stock and barrel. The chamber contained a live .22 caliber bullet. Schrader also found in the trash can a case of .22 caliber bullets and scattered bullets.
Officer Pick testified that defendant was wearing a backpack at the time of arrest and that the gun in the restroom would have fit inside the backpack. Pick searched defendant's backpack incident to arrest and found, among other things, a live .22 caliber bullet and a live .223 caliber bullet. The .22 caliber bullet matched the caliber of the gun and the brand of bullets found in the restroom trash *1131 can. Asked whether he found a knife sheath, Pick testified that he did not: "No knives, no sheaths, no anything that appeared to be weapon related of any sort." A knife sheath or anything weapon-related would have been logged into evidence. The only items logged into evidence from the backpack were the two bullets. Otherwise, defendant's backpack and its con-tents, which included clothing, toiletries, and a Bible, were logged as personal property. It was Pick's decision to log *447 the backpack as personal property. When defendant did not retrieve the backpack within 90 days, it was destroyed in accordance with jail policy.
Delong testified that he did not search defendant's backpack. Delong initially stated that someone else logged the backpack into personal property, but, after having his memory refreshed with a log form, Delong remembered that he was the one who logged it. Delong reaffirmed that he did not search or go through it.
Defendant testified that he did not have a gun in S's apartment and never threatened S. S was in a bad mood when she came home. While he was packing his backpack to leave, S might have seen an empty knife sheath that he was packing and mistaken it for a gun. The knife sheath was long enough to hold a mini-machete and made of really hard plastic. According to defendant, it would look just like a gun, like the barrel of a gun. Defendant denied knowing anything about the rifle in the restaurant restroom. Defendant did have the .223 caliber bullet in his backpack; he had found it in an area where kids were playing and picked it up so that kids would not get it. That was the only bullet in his backpack. According to defendant, the officer was untruthful when he testified that he found the .22 caliber bullet in defendant's backpack.
The jury found defendant guilty of unlawful possession of a short-barreled rifle, ORS 166.272, with a firearm, ORS 161.610(2). The verdict was delivered on September 5, 2014.
NEW TRIAL MOTION
On December 3, 2014, defendant filed a motion for a new trial. According to the motion, in early November 2014, defendant told his criminal defense counsel that there might be a video of his booking. In connection with a pending civil action by defendant against the county, the county's counsel had mentioned a video. Defendant's counsel immediately subpoenaed and obtained a copy of the video. The video shows Delong going through defendant's backpack, in defendant's presence, to log it into property. Delong removes various items from the backpack, including an item that is not *448 inconsistent with the knife sheath that defendant described at trial.[1]
Defendant moved for a new trial based on irregularity in the proceedings, ORCP 64 B(1); misconduct of the prevailing party, ORCP 64 B(2); and newly discovered evidence, ORCP 64 B(4). As to the first two grounds, defendant argued that "[t]he addition of the video calls into question the accuracy of the officer's versions of inventorying, seizing, and logging into property [defendant's] backpack," particularly Delong's testimony that he did not go through the backpack and Pick's testimony that the backpack did not contain a knife sheath. Defendant did not argue that the state's failure to produce the video was itself misconduct.[2] As to the third ground, defendant argued that the video would have corroborated his testimony that he had a knife sheath in his backpack.
The court denied defendant's motion. It explained: "I listened to the testimony. [S] was here. She was convincing that she saw a gun, [and] a gun consistent with what she described was later found in the restroom with [defendant], as well as ammunition to match it in his backpack." In the court's view, given the strength of the state's evidence, defendant was not prejudiced by the absence of the video or testimony by the *1132 officers that may have been inconsistent with the video.
ANALYSIS
ORCP 64 B applies in criminal proceedings. ORS 136.535(1). As relevant here, ORCP 64 B provides:
"A former judgment may be set aside and a new trial granted in an action where there has been a trial by jury on the motion of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:
*449 "(1) Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having a fair trial.
"(2) Misconduct of the jury or prevailing party.
"* * * * *
"(4) Newly discovered evidence, material for the party making the application, which such party could not with reasonable diligence have discovered and produced at the trial."
We review the denial of a motion for a new trial for abuse of discretion, except that we review any underlying legal interpretations for legal error. Greenwood Products v. Greenwood Forest Products , 357 Or. 665, 678-79, 359 P.3d 219 (2015).
We start with defendant's motion for a new trial based on newly discovered evidence. In order to obtain a new trial based on newly discovered evidence, a party must show, among other things, that the evidence is "such as will probably change the result if a new trial is granted." Greenwood Products, Inc. , 357 Or. at 682, 359 P.3d 219 (internal quotation marks omitted); see also, e.g. , State v. Hill , 39 Or. 90, 94-95, 65 P. 518 (1901). In the words of ORCP 64 B, only evidence that would probably change the result "materially affect[s] the substantial rights" of a party. ORCP 64 B; see also Oberg v. Honda Motor Co. , 316 Or. 263, 273, 851 P.2d 1084 (1993), rev'd on other grounds , 512 U.S. 415, 114 S.Ct. 2331, 129 L.Ed. 2d 336 (1994).
Looking at the totality of the evidence, we agree with the trial court's assessment that the booking video would not probably change the result if a new trial were granted. The state put on very strong evidence-particularly S's testimony, the 9-1-1 recording, the gun found in the restaurant restroom, and the .22 bullet found in defendant's backpack-that defendant had a gun, regardless of whether he also had a knife sheath. There is no question that the video might aid defendant's credibility as far as his assertion that he had an empty knife sheath in his backpack. But we cannot say that a credibility boost on that issue would probably change the result. It is simply too speculative to conclude that seeing an object on the booking video that *450 could be an empty knife sheath would lead a jury to credit the entirety of defendant's testimony, discredit the entirety of S's testimony, disregard the physical evidence, and acquit defendant of the unlawful possession charge.
This is not a case where newly discovered evidence directly contradicts the only or most important evidence offered by the state. See, e.g. , State v. Acree , 205 Or. App. 328, 335-36, 134 P.3d 1069 (2006) (concluding that newly discovered evidence that directly contracted a police officer's testimony, which testimony was the most persuasive evidence of defendant's guilt, "probably would have led a reasonable person to a different conclusion from that reached by the jury" and therefore warranted a new trial). Rather, defendant's version of events is entirely contradictory to S's version of events, and S's version of events could have taken place regardless of whether defendant had a knife sheath in his backpack. If the case were solely a credibility contest between defendant and S, then the booking video might warrant a new trial. But, coupled with the physical evidence that the police found in the restroom and in defendant's backpack, the trial court did not abuse its discretion in denying a new trial under ORCP 64 B(4) based on the newly discovered evidence of the booking video.
As for ORCP 64 B(1) and (2), defendant also moved for a new trial based on irregularity in the proceedings and misconduct, arguing that the booking video "calls into question" the accuracy of Delong's and Pick's testimony. The video shows that Delong went through defendant's backpack while logging it into personal property, so his testimony *1133 that he did not go through it was inaccurate. The video also makes it possible that Pick saw a knife sheath in defendant's backpack, whereas he testified that he did not see a knife sheath and would have logged it into evidence if he had. Defendant argues ORCP 64 B(1) and (2) together on appeal, as he did below, so we address them together.[3] *451 When the gravamen of a motion for a new trial is newly discovered evidence, the motion typically should be brought under ORCP 64 B(4) and considered under the well-established standard for newly discovered evidence. Cf. State v. Baker , 87 Or. App. 285, 291 & n. 3, 742 P.2d 633, rev. den. , 304 Or. 405, 745 P.2d 1225 (1987). Defendant does not explain how inaccurate or potentially inaccurate testimony constitutes an "irregularity" within the meaning of ORCP 64 B(1). Nor does he address how the officers' testimony was "misconduct of the prevailing party" within the meaning of ORCP 64 B(2); and, to the extent the trial court implicitly found that the state did not engage in misconduct, defendant has not challenged any such finding.
In any event, defendant's argument under ORCP 64 B(1) and (2) ultimately fails for similar reasons as those set out above regarding his argument under ORCP 64 B(4). The state's evidence was very strong that, regardless of whether he had a knife sheath, defendant also had a gun. We therefore cannot say that the trial court abused its discretion when it concluded that any inaccuracy in Delong's and Pick's testimony did not materially affect defendant's substantial rights and, accordingly, denied defendant's motion for a new trial. See DeWolf v. Mt. Hood Ski Bowl, LLC , 284 Or. App. 435, 447, 392 P.3d 759, rev. den. , 361 Or. 885, 403 P.3d 771 (2017) ("With regard to whether the ground for a new trial involved conduct or evidence that materially affected the moving party's substantial rights, we will usually defer to a trial court's determination of prejudicial effect, reviewing for an abuse of discretion.").
Affirmed.

The trial court never made any findings about the video, only stating that it was "very interesting." From our own viewing, it is possible-although by no means certain-that one of the objects seen on the video could be a knife sheath.

Defendant specifically disavowed any claim of a discovery violation, telling the trial court that the video "certainly would have been useful in impeaching the officers," but that "this isn't a case where-I'm not saying the State had-had not failed to discover something."

In some cases, the denial of a motion for new trial on certain grounds may not be reviewable. See State v. Sullens , 314 Or. 436, 443, 839 P.2d 708 (1992). The rule appears to be a prudential one grounded in concepts of waiver. See State v. Langley , 214 Or. 445, 476-77, 323 P.2d 301, cert. den. , 358 U.S. 826, 79 S.Ct. 45, 3 L.Ed.2d 66 (1958) ; State v. Carrasco-Montiel , 279 Or. App. 64, 80-82, 379 P.3d 529, rev. den. , 360 Or. 568, 385 P.3d 81 (2016). No one has challenged reviewability here, and the facts do not suggest waiver.