No. 58 January 31, 2024 493

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of K. G.,
a Person Alleged to have Mental Illness.

STATE OF OREGON,
*Respondent,*

*v.*

K. G.,
*Appellant*

Marion County Circuit Court
22CC03330; A178907

Jennifer J. Brown, Judge pro tempore.

Submitted May 22, 2023.

Liza Langford filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Christopher A. Perdue, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

In this civil commitment proceeding, appellant appeals a judgment civilly committing her for a period not to exceed 180 days. On appeal, in two assignments of error, she argues that (1) the trial court erred in finding that the state had met its burden to prove by clear and convincing evidence that she was a danger to herself and (2) that the trial court erred in failing to require the civil commitment investigator to contact appellant's counsel in advance of any interviews with appellant. We affirm.

On May 31, 2022, appellant was placed on a physician's mental health hold after an incident at her mother's home where she cut her neck and hands with a knife. She was tazed twice and restrained by police before being brought to a hospital. Her neck wound required surgical intervention. Appellant was "combative with staff prior to surgery." Appellant had been diagnosed with schizophrenia and had a history of "medication non-adherence."

The court appointed counsel for appellant the same day that she was placed on a hold. The civil commitment investigator interviewed appellant on June 2 and 3. Appellant's counsel was not notified prior to the civil commitment investigator's interviews with appellant. Upon receipt of the investigator's report, filed on June 3, the court found that there was probable cause to believe that appellant was a person with mental illness, appointed a mental health examiner, and scheduled a commitment hearing pursuant to ORS 426.090. On June 6, appellant's counsel filed a motion requesting notice of any future interviews by the civil commitment investigator and objecting to the use of unadvised statements made to the civil commitment investigator in the earlier interviews. In the motion, appellant argued that ORS 426.100(3)(f) requires that counsel be given notice and the opportunity to be present at any interactions between the civil commitment investigator and the person being considered for commitment.

On June 6, appellant appeared before the trial court for the civil commitment hearing. At the hearing, the court denied appellant's motion concerning interviews by

the civil commitment investigator, concluding that (1) "the term 'examination' within the statute applies to the examination that occurs during a hearing" and (2) that there is not "enough of a parallel" between civil and criminal proceedings to apply the same standard of due process protections to people in a civil commitment hearing as to people in a criminal trial. Following the hearing, the trial court committed appellant, finding that there was clear and convincing evidence that appellant has schizophrenia, that she was a danger to self because she was "highly likely to hurt herself," and that she was "highly unlikely to take her medications for the mental disorder," but that there was not sufficient evidence to commit her as a danger to others and that she was not "unable to meet her basic needs."

## PRESENCE OF COUNSEL "AT EXAMINATION"

We begin with appellant's second assignment of error. Appellant argues that the trial court erred in failing to require the civil commitment investigator to contact appellant's counsel in advance of any interviews. As we understand it, appellant argues that under the civil commitment statute providing for counsel for a person under consideration for civil commitment, ORS 426.100(3)(f), the phrase "counsel *** may be present at examination" gives appellant the right to have counsel present at any interviews conducted by the civil commitment investigator, meaning that counsel must be given advance notice of the interview and the opportunity to be present.

ORS 426.100(3)(f) provides, "In all cases suitable legal counsel shall be present at the hearing and may be present at examination and may examine all witnesses offering testimony, and otherwise represent the person." Appellant argues that the word "examination" applies to the "interview or examination" conducted by the civil commitment investigator in advance of the civil commitment hearing. ORS 426.074(2)(a) ("The investigation conducted should, where appropriate, include an *interview or examination* of the person alleged to have a mental illness in the home of the person or other place familiar to the person." (Emphasis added.)). Additionally, appellant asserts that she has a due process right to have counsel present at those interviews

under the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, section 11, of the Oregon Constitution. Therefore, appellant argues, because her counsel was not given notice of the interview by the civil commitment investigator in advance due to the trial court's failure to instruct the civil commitment investigator to provide such notice, she was deprived of the opportunity to have her counsel present and her rights were violated.

The state argues that the trial court was correct when it determined that the term "examination" in the statute refers only to the examination performed during the hearing by the mental health examiner, and not to interviews or examinations by the civil commitment investigator. Additionally, the state argues that there is no due process right to counsel during interviews with the civil commitment investigator. Finally, the state argues, even if the trial court did err, any error was harmless.

Thus, appellant's second assignment includes two arguments: (1) that appellant has a statutorily mandated opportunity to have counsel present at interviews under ORS 426.100(3)(f), and (2) alternatively, that appellant has a constitutional procedural due process right to counsel at the interviews. As explained below, we conclude that the statute applies to examinations by the mental health examiner and not the civil commitment investigator. As to the constitutional argument, appellant has failed to develop it adequately for our review; she has failed to provide any support beyond simply asserting that she has such a right under various constitutional provisions. Therefore, we do not address it further. *See Trent v. Connor Enterprises, Inc.*, 300 Or App 165, 170, 452 P3d 1072 (2019) (declining to "develop arguments *** that have not been briefed sufficiently to persuade us of their merit, and that raise potentially complicated issues"); *Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to as modified on recons*, 187 Or App 472, 68 P3d 259 (2003) (recognizing that we will not "develop a party's argument when that party has not endeavored to do so itself"). Accordingly, we conclude that the trial court did not err in failing to

require the civil commitment investigator to notify appellant's counsel before their interviews of appellant.

We review the trial court's interpretation of a statute for legal error. *State v. Davis*, 290 Or App 444, 449, 415 P3d 1129, *rev den*, 362 Or 860 (2018). Our goal is to determine the legislature's intent. ORS 174.020; *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We begin by considering the text and context of ORS 426.100(3)(f). *Gaines*, 346 Or at 171-72. When a term used in a statute has multiple meanings, we look to the context of the statute to determine which meaning the legislature intended. *State v. Fries*, 344 Or 541, 546, 185 P3d 453 (2008). A statute's context "includes other provisions of the same or related statutes, the pre-existing statutory framework within which the statute was enacted," as well as prior decisions that have interpreted the term. *Ogle v. Nooth*, 355 Or 570, 584, 330 P3d 572 (2014). In addition to text and context, we consider the legislative history of the statute and accord it the weight that we consider to be appropriate. ORS 174.020(3); *Gaines*, 346 Or at 171-72.

We begin with some background on the statutory scheme in which ORS 426.100(3)(f) appears, which distinguishes between the investigation by the *civil commitment investigator*, including interviews and examination, and the examination by the *mental health examiner*. When a person is put on an involuntary mental health hold, the person or entity initiating the hold must notify the person's county of residence. ORS 426.070(1). The county notifies the court, and an investigation is commenced to determine whether there is probable cause to believe that the person meets the legal criteria to be civilly committed. ORS 426.070(3). As part of that investigation, the civil commitment investigator reviews medical records, interviews individuals that the investigator has probable cause to believe have "pertinent information regarding the investigation," "where appropriate" performs an "interview or examination" of the person, and produces an investigation report. ORS 426.074(2). Based on the investigator's report, the county makes a recommendation to the court about whether there is probable cause to believe that the person should be civilly committed. ORS 426.074(3); ORS 426.070(4).

If the court concludes that there is probable cause to believe the person meets the criteria, it issues a citation, schedules a civil commitment hearing, and appoints a mental health examiner. ORS 426.070(5)(a); ORS 426.075(2); ORS 426.110(1). The mental health examiner reviews medical records; examines the person, which, as discussed further below, may occur before the hearing; attends the hearing and examines the person in court; and makes a recommendation to the court about whether the person should be committed. ORS 426.120.

The civil commitment investigator, on the other hand, may or may not testify at the hearing, but the investigator's written report must be provided to the court in advance of the hearing. ORS 426.095(4)(d)(C); ORS 426.074(3). The portion of the investigator's report that is not objectionable on evidentiary grounds will be introduced into evidence at the hearing as long as the investigator is present to be cross examined or the investigator's presence is waived by the person. ORS 426.095(4)(d).

Counsel is appointed for the person "as soon as reasonably possible" when the person is placed on an involuntary hold and must be appointed before the hearing. ORS 426.100(3).

With that context in mind, we turn to the dispute we must address: whether the term "examination" in ORS 426.100(3)(f) refers to the "interview or examination," ORS 426.074(2)(a), of the person by the civil commitment investigator, the examination by the mental health examiner, or both. As explained below, we conclude that the legislature intended the term "examination" in ORS 426.100(3)(f) to refer to the examination performed by the mental health examiner both before and during the hearing.

As set out above, ORS 426.100(3)(f) provides, "In all cases suitable legal counsel shall be present at the hearing and may be present at examination and may examine all witnesses offering testimony, and otherwise represent the person." The question is what it means that counsel may be present "at examination." That text could refer to the interactions between the person and the civil commitment

investigator, the interactions between the person and the mental health examiner, or both.

The state argues that, because the other two phrases regarding counsel in the statute refer to the hearing itself and the examination of witnesses, which occurs at the hearing, it is most reasonable to interpret the third as providing the opportunity to have counsel present at the examination by the mental health examiner that happens during the hearing. Appellant argues that because the examination by the mental health examiner happens during the hearing where counsel is already required to be present, it would be redundant to separate the attorney's duty to be present at the hearing from their ability to be present at the examination. Thus, appellant argues, the legislature must have intended the "may be present at examination" language to refer to the "interview and examination" by the civil commitment investigator. ORS 426.074(2)(a).

In 1987, the legislature substantially revised the civil commitment statutes, including separating the provision requiring the person's attorney to be present at the hearing from the provision allowing their attorney to be present at the "examination." Or Laws 1987, ch 903, § 14. Recognizing concerns about the civil commitment process, it convened a task force on civil commitment. Task Force on Civil Commitment of Mentally Ill Persons Recommendations, House Judiciary Committee, HB 2324, Jan 30, 1987, Ex A, 1 (Task Force Recommendations).

Prior to the 1987 amendments, examination of a person by the mental health examiner occurred exclusively during the hearing. *See* Testimony, House Judiciary Committee, HB 2324, Feb 10, 1987, Ex C (written testimony of Charles Williamson for the American Civil Liberties Union) ("Under the present system the judge and counsel can see whether the examiners do a careful and complete job of assessing the problems of the [person]."). The task force noted that the "current practice of conducting the evaluation of the [person] in the courtroom is not adequate" and can be "very superficial," and it recommended that the legislature amend the statutes to allow the mental health examiner to

"review the medical record and interview the person prior to a hearing." Task Force Recommendations at 22.

To improve the process, the legislature expanded the mental health examiner's role beyond the hearing: The amendments provide that the mental health examiner must be appointed "sufficiently in advance of the hearing so that [they] may begin their preparation for the hearing," and the examiner must have access to "records *** and the [civil commitment investigator's] report *** at least 24 hours before the hearing." Or Laws 1987, ch 903, § 12; ORS 426.075(2). The examiner must "[i]nitiate the examination process prior to the hearing," Or Laws 1987, ch 903, § 16(1)(b); ORS 426.120(1)(b), and "[u]pon completion of the hearing, file the reports," Or Laws 1987, ch 903, § 16(1)(d); ORS 426.120(1)(d). The current statute does not clarify specifically when or where the mental health examiner's examination of the person is to take place, but the person and the state both "have the right to cross-examine *** [t]he examining physicians," presumably during the hearing. ORS 426.095(3)(c). As we understand those amendments, they require the mental health examiner to begin "the examination process" before the hearing, which may include examining the person before the hearing.

At the same time, the legislature amended the language at issue in ORS 426.100(3)(f). Prior to the amendments, ORS 426.100(3)(f) provided, "In all cases suitable legal counsel shall be present at *the hearing and examination* and may examine all witnesses offering testimony, and otherwise represent the person." ORS 426.100(3)(f) (1981), *amended by* Or Laws 1987, ch 903, § 14 (emphasis added). Correspondingly, counsel was required to be present at the hearing and—necessarily, because the examination took place at the hearing—also at the examination by the mental health examiner. The legislature amended ORS 426.100(3) (f) to provide, "In all cases suitable legal counsel shall be present at the hearing and *may be present at examination* and may examine all witnesses offering testimony, and otherwise represent the person." (Emphasis added).

The fact that the legislature separated the opportunity to have counsel present at the examination from the

requirement that counsel be present at the hearing at the same time that it made it possible for the mental health examiner to conduct part of the examination before the hearing strongly suggests that the separated right was intended to maintain a person's ability to have counsel present for the examination by the mental health examiner, just as had been the case before the amendments. The amendments made it possible that the mental health examiner's examination would take place, in part, before the hearing, and, correspondingly, also provided that, if that occurred, the person had the opportunity to have counsel present during that examination.

In the same set of amendments, the legislature also addressed concerns regarding the civil commitment investigator's powers. Those concerns were that the civil commitment investigator's role was too limited, resulting in information that was not adequate for making an informed probable cause determination, and that courts' treatment of the civil commitment investigator's report was inconsistent across the state. Task Force Recommendations at 17-19. To remedy those concerns, the legislature expanded the civil commitment investigator's access to information to include interviews with collateral individuals, like family members, who may have pertinent information, and the person's medical records for the period beginning when they were placed on the involuntary hold, without the person's consent. Or Laws 1987, ch 903, § 10; ORS 426.074(2). Additionally, the amendments provided for a standard practice of allowing the civil commitment investigator's report and testimony into evidence subject to evidentiary rules and cross-examination. Or Laws 1987, ch 903, § 13; ORS 426.095(3), (4).

Unlike the amendments to the mental health examiner's role, the amendments to the civil commitment investigator's role did not change the scope or timing of the investigator's interactions with the person; instead, they allowed the investigator to collect information from other sources and addressed admissibility of the report at the hearing. Those changes do not suggest any need to expand or separate the person's ability to have counsel "at examination" from the requirement that counsel attend the hearing.

Nor does the legislative history suggest that the legislature intended the newly separate ability for counsel to be present "at examination" to be linked to the changes in the civil commitment investigation.

In sum, because the 1987 amendments shifted the examination by the mental health examiner from an entirely in-court proceeding to a potentially partially out-of-court proceeding, and in the absence of any suggestion that the legislature intended to extend the opportunity to have counsel present to the preliminary investigation by the civil commitment investigator, we conclude that the legislature intended the "may be present at examination" language to allow a person the opportunity to have their counsel present during examination by the mental health examiner if it occurs before the hearing.

As noted above, appellant argues that, if "examination" refers only to examination by the mental health examiner, it is redundant to provide the person with the opportunity to have counsel present "at examination" because the person already has counsel at the hearing. However, in light of the fact that the 1987 amendments created the possibility that part of the mental health examination could take place before the hearing, there is no redundancy.

Thus, we conclude that the "examination" referred to in ORS 426.100(3)(f) is the examination performed by the mental health examiner, not the "interview or examination" performed by the civil commitment investigator. Additionally, we conclude that ORS 426.100(3)(f) requires the court to provide the person with the opportunity to have counsel present during any examination performed by the mental health examiner—whether it takes place during the hearing or at another time or place.

In this case, there is no evidence in the record that the mental health examiner examined appellant outside of the hearing, and appellant does not argue that she was examined by the mental health examiner outside of the hearing and outside of the presence of her counsel. Therefore, we conclude that ORS 426.100(3)(f) was not violated.

## DANGER TO SELF

Turning to appellant's first assignment of error, appellant argues that the state did not present sufficient evidence that she was a danger to herself as a result of a mental disorder and, therefore, a person with a mental illness. We disagree.

In reviewing civil commitments, unless the appellant requests *de novo* review, we shall "review the trial court's legal conclusions for errors of law, but [we] are bound by its findings of historical fact unless there is no evidence to support them." *State v. D. R.*, 239 Or App 576, 579, 244 P3d 916 (2010); *State v. M. A.*, 276 Or App 624, 625, 371 P3d 495 (2016). There is no request for *de novo* review in this case.

To determine whether the evidence was legally sufficient to support the trial court's disposition, we "view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *State v. T. Y.*, 285 Or App 21, 22, 396 P3d 986 (2017) (internal quotation marks omitted). To commit appellant, the state had to prove by clear and convincing evidence that because of a mental disorder, appellant was a danger to herself or others, or that she was unable to provide for her own basic personal needs. ORS 426.005(1)(f)(A), (B); ORS 426.130(1)(a)(C); *State v. D. J.*, 206 Or App 146, 152, 135 P3d 397 (2006).

Appellant has a history of hospitalizations, leaving treatment against medical advice, medication non-compliance, and self-harm. Her mother testified that appellant has struggled with symptoms of mental illness since her senior year of high school. The treating physician at the hospital testified that she was "at great risk for hurting herself in the future" because "[s]he will not take her medications and those symptoms [of schizophrenia] will come back." The civil commitment investigator also testified that appellant would not be compliant with her medication regime and that "she would be a danger to herself once she left an * * * inpatient program." Appellant asserted at the hearing that her

injuries were accidental, and that she would comply with nonpsychiatric medications for her physical injuries, but that she did not need to stay at the treatment facility.

Based on her diagnosis of schizophrenia, her past medication noncompliance, her lack of insight into her own condition, and her history of severe self-harm, the trial court did not err when it found that the state had met its burden to prove by clear and convincing evidence that appellant was a danger to herself as the result of a mental disorder.

## CONCLUSION

Because the term "examination" in ORS 426.100(3)(f) refers to the examination performed by the mental health examiner, not to the civil commitment investigator, the court did not violate ORS 426.100(3)(f) by failing to require the civil commitment investigator to notify appellant's counsel in advance of any interviews with appellant. Because the record supports that the state showed by clear and convincing evidence that appellant was a danger to herself as the result of a mental disorder, the trial court did not err when it civilly committed appellant.

Affirmed.